Curia, per Woodworth, J.
The act of ¡February 19th, 1819, (sess. 42, ch. 18, s. 35,) declares, that the harbor masters shall have authority to regulate and station -"all ships and vessels in the stream of the Bast and North rivers, within the limits of the city of New York, and the wharves thereof; and to remove, from time to time, such vessels as *350 are not employed in receiving and discharging their cargoes^ to ma^e room f°r such others as require to be more immediately accommodated, for the purpose of receiving or discharging their’s: and that the harbor masters, or either of them, shall have authority to determine how far, and in what instances, it is the duty of the masters and others, having charge of ships or vessels, to accommodate each other in their respective situations. For refusing or neglecting to obey the directions of the harbor masters, or either of them, the penalty of $50 is given for every offence.
The present action was commenced in the court below, to recover for a violation of this act. It appeared in evidence, that the harbor master directed the plaintiff in error, who commanded a steamboat called The Thistle, lying at a wharf on the North river, to move a certain distance, in order to give a birth to another steamboat that arrived, called The Legislator. The order was disobeyed. It was contended that the law was unconstitutional, on the ground that the wharf where The Thistle was lying, was the property of William Gibbons, who leased it for one year to Thomas Gibbons and the plaintiff in error. This agreement was proved in the court below. It was urged that the legislature had no power to regulate the matters in question, where the wharf was private property; that the exercise of such a power impaired the obligation of contracts.
By the charter of the city, from which the plaintiff’s lessor derives his title, the royal prerogative of government is granted to the mayor, aldermen and commonalty of the city. When they convey a lot of land, or waterlot, their sovereignty, as to the subject matter, is not gone. They possess the same" power, for the common benefit, as they possessed prior to the grant. The statute in question was passed for the preservation of good order in' the harbor. It appears to be a necessary police regulation, and *not void, although it may, in some measure, interfere with individual rights. It was, therefore, no defence, to show that the title to the wharf was vested in the owner of the steamboat Thistle. The harbor master had jurisdiction under the act *351 over all private wharves. They were subject to all police regulations.
It seems to me that the power exercised in this case, is essentially necessary for the purpose of protecting the rights of all concerned. It is not, in the legitimate sense of the term, a violation of any right; but the exercise of a power indispensably necessary, where an extensive commerce is carried on. If the harbor is crowded with vessels arriving daily from various parts, the power is incident-to such a state of things. Disorder and confusion would be the consequence, if there was no control. It will be observed, that no question is raised as to the right of' the steamboat Legislator, to lie at this wharf, had there been no other vessel occupying it. The ground of defense is, that the law conferred no authority to interfere at all; the plaintiff in error having the exclusive right of deciding whether to remove or not, in order to give place to another vessel. The right assumed under the law would not be upheld, if exerted beyond what may be considered a necessary police regulation. The line between what would be a clear invasion of right on the one hand, and regulations not lessening the value of the right; and calculated for the benefit of all, must be " distinctly marked. On the principle contended for here, I do not perceive on what ground, various regulations for the better government of the police of a crowded population can be supported. And yet, to a certain extent, it has never been doubted that the legislature were competent to direct. Police regulations are legal and binding, because for the general benefit; and do not proceed to the length of imparing any right in the proper sense of that term.
The soverign power in a community, therefore, may, and ought to prescribe the manner of exercising individual rights over property. It is for the better protection and enjoyment of that absolute dominion which the individual ^claims. The powers rest on the implied right and duty of the supreme power to protect all. by statutory regulations, so that, on the whole, the benefit of all is promoted. Every public regulation in a city may, and does, in some *352 gensé, limit and restrict the absolute right that existed pre But this is not considered as an injury. So far from it, the individual^ as well as others, is supposed to be benefited. .
It may then be said, that such a power is incident to every well regulated society; and without which, it could' not well exist. Is there a doubt that the legislature have a right to authorize a road through the wild land of A. without his consent ? "This right has been assumed and acted upon without a question, ever since we became an independent government. No compensation is allowed, in such cases, to the owner. Can he defeat" the operation of the law, by saying that private right is invaded ? The doctrine has not yet been advanced. Such a law, I apprehend, Is constitutional and obligatory; because, in many cases, necessary for the public benefit, and not deemed injurious to the individual whose land is taken. If the power extends, in some cases, to the appropriation of individual, property, I perceive no reasonable objection to the exercise of it, in the slightest degree, appearing in the case before us. To say that an order to remove a vessel a few feet one way or the other, without depriving her of a birth at a wharf, is a violation of right, seems to go the extent of denying any interference or regulation. The numerous cases in cities, much stronger than the present, where this power has been deemed constitutional, and never drawn in question, goes strongly to prove, that regulations like those in question, do not fall within the principle contended for by the plaintiff in error. The owner of a lot in a city intends to build of wood; the constituted authorities say, “ You must not exercise that right; it is dangerous to all. You may build of brick or stone; because the safety of all is, in this way, promoted.” Can the owner, with impunity, violate such a law, because he has the absolute right of property ? It has not *been heretofore so considered. Numerous instances might be put, going to show the clear right to legislate in such cases. I am well satisfied, that the law under which the harbor master acted, was obligatory; and that his acts under it were valid. The consequence *353 is, that the recovery was right, The judgment in the court below must be affirmed.
Judgment affirmed.