Cole v. Kelly.

# New York Marine Court.

*Trial Term—March*, 1882.

## CHESTER S. COLE, as Captain of the Port of New York, *against* JOHN KELLY.

**Powers of the Captain and Harbor-masters of the Port of New York.**—Under section 7 of chapter 487 of the Laws of 1862, the harbor-master acts *quasi judicially*, and has the power to decide whether a vessel is in good faith engaged in discharging its cargo, and whether circumstances require that the vessel should be assigned to another berth. The questions must be determined in a summary manner, and the legislature has confided their determination to the harbor-master. A refusal to comply with the lawful orders of the harbor-master in the matters confided to his discretion, subjects the party so refusing to the statutory penalty of fifty dollars.

Motion for new trial upon the minutes.

*John D. Quincey*, for the motion.

*Goodrich & Deady*, opposed.

McAdam, J.—Section 7, of chapter 487, of the Laws of 1862, provides, that "Each harbor-master shall have power, within the district assigned to him, to provide and assign suitable accommodations for all ships and vessels, and regulate them in the stations they are to occupy at the wharves or in the stream, and to remove from time

to time such vessels as are not employed in receiving or discharging their cargoes, to make room for such others as require to be more immediately accommodated for the purpose of receiving or discharging their cargoes, *and shall have power to determine as to the fact of their being fairly and in good faith employed in receiving or discharging their cargoes*, and shall have authority to determine how far; and in what instance, it is the duty of the master and others having charge of ships or vessels to accommodate each other in their respective situations. And if any master or any person having charge of any vessel, canal-boat, barge or lighter *shall refuse or neglect* to move his vessel, canal-boat, barge or lighter, when ordered to do so by the captain of the port or by a harbor-master, or shall resist or forcibly oppose said officers in the discharge of their duties, *such master or person so refusing, neglecting*, resisting or opposing, *shall, for every such offense, forfeit and pay the sum of fifty dollars, to be recovered* with costs of suit by and in the name of the captain of the port, before any court having cognizance thereof."

Under these provisions, the harbor-master acts quasi-judicially, and his judgment is final (Benedict *v.* Vanderbilt, 1 *Robt.* 194, 202). It is conceded, in this case, that the harbor-master ordered the defendant to move his vessel, and it is clear that, if he did not refuse, he certainly neglected to move it, and for this neglect he is liable for the penalty of $50. The propriety of the removal seems to be a question confided to the good judgment of the harbor-master. The nature of the employment requires that the determination of such questions should be summary, and the legislature has clothed the harbor-master with the judicial discretion of determining whether certain vessels shall be removed, and whether they are fairly and in good faith engaged in receiving or discharging their cargoes, so

as to make their removal impracticable. These ques- tions were decided against the defendant by the harbor-master, and for a failure to obey his orders the statute penalty attaches. The act of 1869 (c. 277), authorizing the formation of the "Fulton Market Fishmongers' Association," directs the sinking fund commissioners to lease to that association one-half of piers 22 and 23, East river, and the slip between the piers. Pursuant to this act, leases were made to the association, which expire May 1, 1889. The defendant's counsel contends that this act, and the leases made under it, exempt the portions of said piers and of said slip covered by them from the operation of the act of 1862, *supra*, in regard to harbor-masters, and therefore argues that because the defendant's vessel was within the limits of the pier covered by the leases of the Fishmongers' Association, it was without the jurisdiction of the harbor-master.

The act of 1869, *supra*, does not define the kind or class of vessels which are to occupy the piers and slips directed to be leased, but declares that "such lease shall be for the benefit of all persons now holding stands in the said fish market." The lease executed under this act made the portions of the docks and slip demised private docks, and the slip a private slip, in the same manner and to the same extent as if the lease had been given to a private individual or a corporation for their individual use. But, notwithstanding such a lease, the statute in respect to the harbor-masters (act of 1862, *supra*) is valid as a police regulation, and extends to wharves in the hands of private owners (Vanderbilt v. Adams, 7 *Cow.* 349). The act of 1862 conferred upon the harbor-master constabulary authority to prevent overcrowding and confusion, with the view of facilitating the awarding of equal rights among the shipping interests of the city, and it applies to all classes of vessels (Adams v. Farmer, 1 *E. D. Smith*,

Cole *v.* Kelly.

588), excepting sail and row-boats (70 *N. Y.* 104). I have, therefore, failed to discover anything in the act of 1869, *supra*, which either expressly or impliedly repeals the act of 1862, *supra*, or in any way limits its application. In Mason *v.* Maginn (MS. opinion), the New York superior court, special term, in October, 1877, entertained a bill for an injunction against the harbor-master, upon these facts: Mason had leased from the Dock Department a pier at the foot of West Tenth street for a term of years, and appropriated the pier to the use of produce vessels, which congregated there. The harbor-master discovered that such a use of the pier would interfere with the landing of steamers at that pier, and in the adjoining slips, and ordered the produce boats not to land there, and assigned them other berths. Mason thereupon filed his bill of complaint, setting forth the foregoing facts. The court dissolved the injunction, holding that the harbor-master was acting within the authority of the statute, and that the exercise of his functions could not be restrained.

In Hecker *v.* New York Balance Dock Co. (24 *Barb.* 215), the court held, that the corporation of the city of New York may direct the use of any particular slip or wharf to be appropriated exclusively for any particular craft or class of vessels, and that the jurisdiction of dock-masters and harbor-masters is co-extensive with every legal and legitimate use of the basins, piers and wharves. There is nothing in the case just cited, nor in Roosevelt *v.* Godard (52 *Barb.* 533) to which the defendant's counsel has called my attention, which throws any light upon the question involved here. WOODWARD, J., in deciding Vanderbilt *v.* Adams (7 *Cow.* 348), said, "It seems to me that the power exercised in this case is essentially necessary for the purpose of protecting the rights of all concerned. It is not, in the legitimate sense of the term, a violation of any right, but the exercise of a

power indispensably necessary where an extensive commerce is carried on. If the harbor is crowded with vessels arriving daily from various parts, the power is incident to such a state of things. Disorder and confusion would be the consequence if there was no control." Regulations of this kind are necessary and indispensable in every commercial port for the convenience and safety of commerce (Gray v. Frazer, 21 *How. U. S.* 187). The decision of the harbor-master must necessarily be prompt and arbitrary in order to meet the exigencies of the occasion. Without this authority there could be no discipline. The power must be lodged somewhere, and the legislature has placed it with the harbor-master.

The jurisdiction he possesses may be likened to that conferred upon health officers, whose decisions are regarded as correct and final (Metropolitan Board of Health v. Heister, 37 *N. Y.* 661). In Hoeft v. Seaman (6 *Jones & Spencer*, 62) the superior court, held that the powers of the harbor-master were not absolute or arbitrary, and that they had no power to order the removal of vessels from berths occupied by them, except to make room for such others as require to be immediately accommodated for the purpose of receving and discharging their cargoes. Judge MONELL, who wrote the opinion, admits (on p. 71) that it is in conflict with Adams v. Farmer (1 *E. D. Smith*) where it was held that the power was general and not limited to cases where other vessels required to be immediately accommodated in receiving or discharging cargo.

On the occasion when the present penalty was incurred, the steamer *Adelphi* was expected to make a landing. The harbor-master found that the defendant's vessel was in the way. A case was presented for the exercise of his jurisdiction ; he investigated the matter, decided that the defendant's vessel was in the way, that it was not engaged in discharging cargo, and or-

dered the captain to move the vessel. He declined to do so. Under these circumstances, he made himself liable for the statutory penalty of fifty dollars.

A verdict was directed in favor of the plaintiff for this amount, and the motion to set it aside and for a new trial will be denied. No costs.