# Canepa *v.* Mayor & Aldermen of Birmingham.

*Bill in Equity for Injunction against Enforcement of Municipal Ordinance establishing Fire-Limits.*

1. *Municipal corporation; ordinance establishing fire-limits, and prohibiting erection of wooden building.*—A municipal corporation being authorized by its charter "to establish, regulate or change fire-limits within said city, and to pass all laws necessary for the protection of said city against fire, and for this purpose to remove any wooden building or structure, paying the owner therefor a reasonable price;" and having adopted an ordinance prescribing fire-limits, and forbidding the erection of wooden buildings within said limits; a person who, by alleged permission of different city officials, attempts to erect a wooden building within those limits, and is stopped by the police authorities, can not obtain an injunction against interference by the city, unless he shows the authority of said city officials to grant him permission.

APPEAL from the City Court of Birmingham, in equity.
Heard before the Hon. H. A. SHARPE.

J. L. MEADE, for appellant.

CABANISS & WEAKLEY, *contra.*—1. The complainant was charged with knowledge that the municipal charter and ordinances prohibited the erection of the frame building within the fire-limits.—*North Birmingham St. Rwy. Co. v. Calderwood,* 89 Ala. 247; 1 Dillon Mun. Corp. (4th ed.), §§ 354–356. 2. The city had authority to establish fire-limits, and pass all laws necessary for the protection of said city against fires. Acts 1882–3, p. 312, § 20, subdiv. 14. 3. When duly passed, municipal ordinances have the force and effect of laws.—1 Dillon Mun. Corp. (4th ed.), §§ 308, 309.

STONE, C. J.—The amended charter of the City of Birmingham was approved February 17, 1883.—Sess. Acts 1882–3, 301. Section. 20 of that act enumerates the special powers conferred on the Mayor and Aldermen. In its 14th subdivision is this language: "To establish, regulate, or change fire-limits within said city, and to pass all laws necessary for the protection of said city against fire, and for this purpose may remove any wooden building or structure, paying the owner

therefor a reasonable price."—*Ib.* 312. Under this statutory authority, the Mayor and Aldermen established fire-limits within said city, and by ordinance declared that wooden buildings should not be erected within the fire-limits so established. The ordinances of the city are not in evidence, and we are therefore left to the admissions in the pleadings, and to the agreed statement of facts, for all the information we have on this, the most important question raised by this record.

The bill filed by Canepa, considered in all its averments, concedes that the building he proposed to erect, and was in the act of erecting, was a wooden structure, and was within the fire-limits established by and for the city of Birmingham. This implied concession pervades the whole frame-work of the bill. In fact, seeking relief in chancery, instead of waiting until the threatened trespass should be committed, and then suing for the damage, was and is a pregnant admission that he had not a clear legal right to erect the wooden structure. Else why ask and obtain from the chief of the fire department a permit to erect the building on a lot in his rightful possession? And why renew the application to the building commission, and obtain from that board permission to proceed with the work?

The agreed statement of facts leaves no room for doubt on this question. We copy from it as follows: "The building which complainant describes in the bill of complaint, is a two-story frame building with a shingle roof, and is of that kind of buildings prohibited by the city ordinances from being built in the fire-limits. The place where it was being erected, and where it is situated, was at the time it was commenced, and has all the time since it was started, and is now in that portion of the city of Birmingham where by the charter and ordinances of said city frame buildings are prohibited from being built; and when commenced and stopped by the officer of said city, the building and erection of same was in violation of charter and ordinances of said city. . . . That said building is in a densely populated part of the city, which is rapidly improving; that the property-owners and residents near this building objected at the time the building was commenced to its erection, are urging the defendant [Mayor and Aldermen of Birmingham] to remove it, and prevent its completion and permanent location there."

The present bill is prosecuted by Canepa, the appellant. It avers that he had and has a lease-hold interest in the designated lot of ground in Birmingham, on which he proposed to build a two-story building of wooden material; that he applied to the chief of the fire department for a permit to so build,

and obtained same, paying him 50 cents, his fee therefor; that he incurred large expense in purchasing material and hiring workmen, and commenced the building; that at this stage the chief of police warned and forbade him against proceeding with the work, and commanded him to remove it; that he applied to the building commission, of which the Mayor was chief, and obtained its permission to proceed with the work; that he was again stopped by the police, with a threat of arrest if he persisted; and he thereupon filed this bill to obtain an injunction restraining the city authorities from further interference with the completion of the building. The chancellor, on final hearing, dismissed the bill; and from that decree this appeal is prosecuted.

There is, as we have said, no copy of the ordinance establishing the fire limits of the city of Birmingham; and there is, in the record before us, no proof that the chief of the fire department, or the building commission, one or both, were authorized to grant a permit for the erection of a wooden building within the fire-limits. We must, therefore, treat this case as if there was no such authority vested either in the fire department, or in the building commission.

In *Brady v. N. W. Insurance Co.*, 11 Mich. 425, 446, speaking of an ordinance establishing fire-limits in a city, the court said: "Of the power of the common council to pass the ordinance in question, we have no doubt. They contravene no provision of the Constitution as we read it, and they were made in the exercise of a power necessary to the safety of the city. A regulation of the use of property, or a prohibition of its repair when partially destroyed, can not, to my mind, be regarded as a condemnation to public use."

In *Klinger v. Bickell*, 117 Penn. St. 326, it was held that "A borough ordinance, prohibiting the erection of wooden buildings within certain prescribed limits, . . is not unconstitutional." Held further that, such ordinance containing a clause that any person violating its provisions should be compelled to remove the structure, or pay the cost of removal, with a penalty added, the power of the council was not limited to the imposition of the fine imposed, but that it might demolish a wooden building in course of construction within the prescribed limits, after notice that the ordinance would be enforced, without liability on the part of the officers or agents effecting the removal to an action of trespass. Of similar purport are *Douglass v. Cow.*, 2 Rawle, 262; *Wadleigh v. Gilmer*, 12 Me. 403; *King v. Davenport*, 98 Ill. 305; *Baumgartner v. Hasty*, 100 Ind. 575; *Knoxville v. Bird*, 12 Lea, 121;

*Vanderbilt v. Adams*, 7 Cow. 349; *City of Charleston v. Reed*, 24 West Va. 681.

This would seem to be a very wholesome and necessary exercise of police power. Mr. Dillon, in his invaluable work on Municipal Corporations (4th ed.), vol. 1, § 405, under the head of "Public Safety," says: "Municipal corporations, with general - power to provide for the safety of their inhabitants, . . may, where this is consistent with the general legislation applicable to the municipality, establish *fire-limits*, and prevent the erection therein of *wooden buildings*." The italics are his.

We think that both principle and authority require us to uphold the ordinance establishing fire-limits in the city of Birmingham; and inasmuch as there is no attempt to show that either the fire department, or the building commission, was clothed with any dispensing power, we affirm the chancellor's decree.

Affirmed.