[No. 10,627.]
May 25, 1881.

## EX PARTE STEFANO CASINELLO.

ORDINANCE OF MUNICIPAL CORPORATION—POLICE POWER—NUISANCE.—
The petitioner was convicted of a violation of Section 47 of an order of
the Board of Supervisors of the City and County of San Francisco, passed
July 18, 1880, which reads as follows: "No person shall throw into or
deposit upon any public street, highway, or grounds, or upon any private
premises, or anywhere except in such place as may be designated for that
purpose by the Superintendent of Public Streets and Highways, any
glass, broken ware, dirt, rubbish, garbage, or filth." The complaint
charged that the petitioner "did willfully and unlawfully throw into
and deposit upon certain lands at Channel and Fifth Streets, in said city
and county, a large quantity of broken ware, dirt, rubbish, garbage, and
filth; the said place where the same was thrown and deposited not being
a place designated for that purpose by the Superintendent of Public
Streets and Highways."

*Held:* The authority to pass the order now under consideration was vested
in the Board of Supervisors by the Act of April 25, 1863; but if there
were any room for doubt, the power is clearly conferred by Section 11,
Article xi., Constitution; and,

*Held,* further, that the complaint was sufficient.

APPLICATION for writ of *habeas corpus.*

*A. D. Spivalo* and *M. Mullany,* for Plaintiff.

*D. L. Smoot,* for Defendant.

MORRISON, C. J.:

On the eighteenth of July, 1880, the Board of Supervisors
of the City and County of San Francisco passed the follow-
ing order:

"Section 47. No person shall throw into or deposit upon
any public street, highway, or grounds, or upon any private
premises, or anywhere except in such a place as may be des-
ignated for that purpose by the Superintendent of Public
Streets and Highways, any glass, broken ware, dirt, rubbish,
garbage, or filth." And the penalty prescribed for a violation
of the order was a fine not exceeding one thousand dollars, or
imprisonment not exceeding six months, or both such fine and
imprisonment.

In pursuance of the above order, the Superintendent of

Public Streets and Highways designated the line of Sixth street, south of Channel, as a "dumping place," or place of deposit.

On the second day of February, 1881, a complaint was filed in the Police Judge's Court of said city and county, charging that the petitioner "did willfully and unlawfully throw into and deposit upon certain lands at Channel and Fifth Streets, in said city and county, a large quantity of broken ware, dirt, rubbish, garbage, and filth; the said place where the same was thrown and deposited not being a place designated for that purpose by the Superintendent of Public Streets and Highways of said city and county." On this ·complaint there was a trial and conviction.

It is claimed, in the first place, that the foregoing complaint is insufficient, and that it charges no · offense. To my mind, it is very clear, however, that the complaint charges .the petitioner with a violation of the order of the Board of Supervisors referred to above; and the only remaining inquiry relates to the validity of that order. Numerous objections are made to it, such as that it is oppressive, unjust, unreasonable, and also that it is unconstitutional.

The provisions of the Constitution, which, it is claimed, are violated by the order, are Sections 1 and 21 of Article i. But I am unable to discover any application which the constitutional provisions referred to have to the order in question.

The objections that the order is oppressive, unjust, and unreasonable are, in my opinion, not well taken. That dirt, rubbish, garbage, and filth are in their nature nuisances, is too plain to admit of controversy; and that glass and broken ware can be very easily converted into nuisances if thrown about promiscuously, is equally plain.

By the Act approved April 25, 1863, power is conferred upon the Board of Supervisors "to authorize and direct the summary abatement of nuisances; to make all regulations which may be necessary or expedient for the preservation of the public health and the prevention of contagious diseases; to provide by regulation for the prevention and summary removal of all nuisances and obstructions in the streets,

alleys, highways, and public gounds of said city and county," etc.

But the delegation of police power to the Board of Supervisors by the Constitution also is in very large and general terms. Section 11 of Article xi. is as follows: "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." No reference has been made to any *general law* on the subject, and I am not aware of the existence of any statute which attempts to regulate the matter now under consideration, except the Act of 1863.

Speaking of the police power, in the case of *Commonwealth* v. *Alger*, 7 Cush. 85, Shaw, J., says: "The power we allude to is rather the police power—the power vested in the Legislature by the Constitution to make, ordain, and establish all manner of wholesome and reasonable laws, statutes, and ordinances, either with penalties or without, not repugnant to the Constitution, as they shall judge to be for the good and welfare of the commonwealth, and of the subjects of the same. It is much easier to perceive and realize the existence and sources of this power than to mark its boundaries or prescribe limits to its exercise."

And Redfield, C. J., delivering the opinion of the Supreme Court of Vermont, in the case of *Thorpe* v. *The Rutland and Burlington Railroad Company*, 27 Vt. 149, says: "The police power of the State extends to the protection of the lives, limbs, health, comfort, and quiet of all persons, and the protection of all property within the State."

The Supreme Court of the United States, in the *Slaughter House Cases*, 16 Wall. 62, uses the following language: "The power here exercised by the Legislature of Louisiana is, in its essential nature, one which has been, up to the present period in the constitutional history of this country, conceded to belong to the States, however it may now be questioned in some of its details. * * * The power is, and must be from its very nature, incapable of any very exact definition or limitation. Upon it depends the security of social order, the life and health of the citizens, the comfort of an existence in a thickly populated community, the enjoyment of private

and social life, and the beneficial use of property." The learned Judge was here speaking of the Act of the Legislature of the State of Louisiana, passed March 8, 1869, concerning and regulating slaughter-houses.

I will content myself with a reference to one additional authority on this subject, and that is the case of *Ex parte Shrader*, on *habeas corpus*, reported in 33 Cal. 279. In that case the petitioner was convicted, in the Police Court of the City and County of San Francisco, of keeping and maintaining a slaughter-house within certain limits, in violation of an order of the Board of Supervisors. The order was framed in pursuance of the Act of 1863, already referred to. The Court there say: "By its first section the Board of Supervisors of the City and County of San Francisco is authorized, among other things, 'to make all regulations which may be necessary or expedient for the preservation of the public health and the prevention of contagious diseases.' * * * It is apparent that the Legislature could confer power upon the Board to pass the order if it could have enacted it directly in the form of a statute in the first instance. The real question to be determined, then, is, whether the power of the Legislature to legislate concerning the public health is so narrowed by constitutional restraints, that it can not regulate the business of slaughtering cattle in populous towns by limiting its prosecution to particular localities or quarters therein. We must hold in favor of the power, unless its unconstitutionality is clear. (*Bourland* v. *Hildreth*, 26 Cal. 162.)" The order was sustained by the Court, and the prisoner was remanded.

It is very clear to me that the authority to pass the order now under consideration was vested in the Board of Supervisors by the Act of April 25, 1863; but if there were any room for doubt, the clause in the Constitution (Section 11 of Article xi.) is too plain to admit of more than one construction: "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." Here we have the authority clearly and expressly conferred by the organic law of the State, and that it is wisely conferred will admit of no doubt.

The regulation in this case, instead of being arbitrary, unreasonable, or unjust, was a wise and salutary one, calculated to promote the welfare and best interests of the city, and was, in its nature and purpose, a salutary police regulation, designed to protect the safety and health of the inhabitants of the City of San Francisco.

The writ is dismissed and the petitioner remanded.