[No. 20287.    Department Two. — March 7, 1887.]

## EX PARTE H. G. FISKE, ON HABEAS CORPUS.

72  125
105  564

72  125
126  673

72  125
140  231

MUNICIPAL CORPORATION — FIRE LIMITS — REGULATION OF WOODEN BUILDINGS — CONSTITUTIONAL LAW. — An ordinance of the city and county of San Francisco prohibiting the alteration or repair of any wooden building within certain designated fire limits, without permission in writing signed by a majority of the firewardens, and approved by a majority of the committee on fire department and the mayor, is not in violation of the fourteenth amendment of the constitution of the United States. Such an ordinance is not unreasonable, oppressive, nor special in its operation; nor is it an unwarrantable delegation of power to the officers named therein; nor does it deny to the owner of such building the equal protection of the law, nor deprive him of liberty or property without due process of law.

ID. — PUBLICATION OF ORDINANCE — INTERVENING SUNDAY. — A provision requiring a municipal ordinance to be published for five successive days in a daily newspaper is complied with by such publication for five successive week days, although a Sunday intervened on which there was no issue of the paper.

APPLICATION for a writ of *habeas corpus.* The facts are stated in the opinion of the court.

*Tilden & Tilden,* for Petitioner.

*Davis Louderback,* for Respondent.

McFarland, J.—The petitioner was convicted in the proper court of a violation of section 40 of an ordinance of the city and county of San Francisco, entitled "To define the fire limits of the city and county of San Francisco, and making regulations concerning the erection and use of buildings in said city and county." He was sentenced to pay a fine of $250, and in default of payment, to be imprisoned in the county jail at the rate of one day for each one dollar of the fine. Not having paid the fine, he is in the custody of the chief of police of said city and county. Said section 40 is as follows: "No wooden building within the fire limits shall be altered, changed, or repaired without permission in writing signed by a majority of the firewardens, approved by a majority of the committee on fire department and the mayor, which permit shall fully express the alterations, changes, or repairs allowed, a copy of which shall be filed by the grantee," etc. Other parts of the ordinance describe the fire limits; and the acts of petitioner for which he was convicted were done within them.

The grounds relied on by petitioner for his discharge which we deem it proper particularly to notice are, that the attempted enactment of said section 40 was beyond the legislative power of the municipal government, or of the state; that said section 40 is unreasonable, oppressive, and not general in its operation; that it is an unwarrantable delegation of power to the officers named therein; that it attempts to grant to said officers absolute power, which may be used arbitrarily to the advantage of favorites, and to the prejudice of others; that it denies to petitioner the equal protection of the law; and deprives him of liberty and property without due process of law, in violation of the fourteenth amendment of the federal

constitution; and that for these reasons, expressed in various forms, the said section is invalid and void.

It is, no doubt, difficult to keep always in view the precise line which definitely bounds the proper exercise of what is called the police power of a state, and separates it from an improper infringement upon the constitutional rights of individuals; but it is often not difficult to see whether a particular exercise of that power is on the right or wrong side of that line. And it has become the settled law that a state, — and under our system a municipality of the state, — in order to protect the property of all its citizens from the ravages of fire, may establish fire limits, and regulate or prevent the use of wooden buildings within such limits; and that, although this may disturb the enjoyment of the rights of an individual, he is, in contemplation of law, compensated by sharing the general benefits derived from it. (Tiedeman on Limitation of Police Power, sec. 122 e, and cases cited.) There would therefore be no doubt as to the validity of the section of the ordinance under review if it were not for the provision that certain officers may grant permissions to make repairs. It is clear, however, that a literal compliance with a regulation prohibiting the repairing of a wooden building might work, in some instances, useless hardships. The repair of a leaking roof or broken window would be necessary to the comfort and health of a family, without enhancing the danger which the framers of the ordinance sought to provide against; and repairs of a more extensive character might be made to particular houses, standing in particular localities, without increasing the fire risks. And it is equally clear that no general rule could be established beforehand that would meet the emergencies of individual cases. Therefore the power to give relief in particular instances is conferred on certain officers; and it is not to be presumed that they will exercise it wantonly, or for purposes of profit or oppression. Neither is the granting of

permissions in particular instances to be considered as the taking away of any rights from those to whom such permissions are not given. The latter would be in no better position if such permissions were given to none, or if there was no power to give them at all.

It is difficult to determine, in many cases, whether or not there has been an unwarranted delegation of powers by the legislative bodies of municipal governments. But powers similar in character to those conferred upon the officers named in the section of the ordinance under discussion have been so often upheld that their validity seems to be established. (Cases in point decided by this court are *Ex parte Moynier*, 65 Cal. 33; *Ex parte Casinello*, 62 Cal. 538; *Ex parte Frazer*, 54 Cal. 94; and in other states, *Vanderbilt* v. *Adams*, 7 Cow. 351; *In re Nightingale*, 11 Pick. 168; *Whitten* v. *Mayor of Covington*, 43 Ga. 421.)

In *Barbier* v. *Connolly*, 113 U. S. 27, the Supreme Court of the United States held that an ordinance of the city and county of San Francisco providing that no person should carry on the business of a public laundry within certain limits without a certificate of the health officer, and another certificate of the board of firewardens, was valid, and not in violation of the fourteenth amendment of the federal constitution. The same thing was held by that court in the case of *Soon Hing* v. *Crowley*, 113 U. S. 703. We see no difference, in principle, between those cases and the one at bar.

It is true, that, at first glance, a somewhat different doctrine seems to have been stated in *Yick Wo* v. *Hopkins*, 118 U. S. 356. A correct understanding, however, of the extent to which that case goes, can be had only by considering that the proof, which the court looked into, showed that the ordinance there under review was so administered as to exclude the subjects of the emperor of China, *and none others,* from the business of keeping a laundry. The court, after alluding to our treaty with

China, says: "In the present cases *we are not obliged* to reason from the probable to the actual, and pass upon the validity of the ordinances complained of as tried merely by the opportunities which their terms afford of unequal and unjust discrimination in their administration; for the cases present the ordinances in actual operation, and the facts shown establish an administration directed so exclusively against a *particular class* of persons as to warrant and require the conclusion that, whatever may have been the intent of the ordinances as adopted, they are applied by the public authorities charged with their administration, and thus representing the state herself, with a mind so unequal and oppressive as to amount to a practical denial by the state of that equal protection of the laws which is secured to the petitioners, as to all other persons, by the broad and benign provisions of the fourteenth amendment to the constitution of the United States. Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances material to their rights, the denial of equal justice is still within the prohibition of the constitution." After alluding to the proof that the petitioners and two hundred other Chinamen were refused permission to carry on the business, while such permission was given to a large number of persons not Chinamen, the court says further: "The fact of this discrimination is admitted. No reason for it is shown, and the conclusion cannot be resisted that no reason for it exists except hostility to the *race and nationality* to which the petitioners belong, and which, in the eye of the law, is not justified. The discrimination is therefore illegal; and the public *administration* which enforces it is a denial of the equal protection of the laws, and a violation of the fourteenth amendment of the constitution."

It is evident from this language that the decision rested mainly upon the admitted discrimination against a class of persons in the *public administration* of the ordinance. Indeed, the admitted facts, which the court considered, showed that the intent of the ordinance was to exclude Chinamen from a business which should be open to all other persons, as clearly as if that intent had been bold'y written on its face. The decision, therefore, *as an authority*, goes no further than to hold that, under a state of facts similar in character to the facts of that case, an ordinance similar in character to the one there passed upon would be invalid. But there are no such facts in the case at bar. There is no evidence here that petitioner asked for permission to repair, or that such permission had been given to others. Neither the face of the ordinance, nor its administration, shows any intent to discriminate against a class of persons, or against any person. To hold the ordinance invalid, we would have "to reason from the probable to the actual." And there is no more reason to presume that the officers named in the ordinance would unjustly discriminate for or against classes or individuals than there is to presume that a harbor-master would abuse the power to station vessels at a wharf, or a police officer the power to station carriages at theaters, or during public processions. Our opinion, therefore, is, that the ordinance in question is not invalid for any of the reasons above noticed.

The objections of petitioner to the sufficiency of the complaint are not tenable,—at least, in the proceeding of *habeas corpus.*

We see no force in the objection that the ordinance was not published according to law. A provision requiring a publication for five successive days in a daily newspaper is complied with by such publication for five successive week-days, although a Sunday intervened, on which there was no issue of the paper.

There are no other points in the case necessary to be noticed.

The prayer of the petition is denied, and the petitioner remanded to the custody of the chief of police.

THORNTON, J., and SHARPSTEIN, J., concurred.