[No. 21069. In Bank.—January 6, 1895.]

## In the Matter of JOHN H. FLAHERTY, on Habeas Corpus.

MUNICIPAL ORDINANCE—BEATING DRUMS IN STREET—POLICE POWER—PERMISSION OF PRESIDENT OF BOARD.—A municipal ordinance forbidding the beating of drums in the traveled streets of a city, without the permission of the president of the board of trustees of the municipality, is a valid exercise of police power.

APPLICATION to the Supreme Court for a discharge from imprisonment upon a writ of *habeas corpus*.

The facts are stated in the opinion of the court.

*H. V. Morehouse, Hiram D. Tuttle,* and *J. E. Richards,* for Petitioner.

The ordinance in question is unreasonable, oppressive, and discriminating, and leaves it to the arbitrary will of the president of the board of trustees to grant

the permission thereby required, and is, therefore, not a proper exercise of the legislative power of the city. (*State* v. *Dering*, 84 Wis. 585; 36 Am. St. Rep. 948; *Barbier* v. *Connolly*, 113 U. S. 27; *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Mayor of Baltimore* v. *Radecke*, 49 Md. 217; 33 Am. Rep. 239; *Anderson* v. *City of Wellington*, 40 Kan. 173; 10 Am. St. Rep. 175; *In re Frazee*, 63 Mich. 396; 6 Am. St. Rep. 310; *City of Chicago* v. *Trotter*, 136 Ill. 430; *Rich* v. *Naperville*, 42 Ill. App. 222.)

*C. C. Bennett*, for Respondent.

The ordinance in question is constitutional and valid, and it was within the power of the city to pass it.   Ordinances involving similar questions have been repeatedly upheld.   (*Commonwealth* v. *Davis*, 140 Mass. 485; *Vance* v. *Hadfield*, 4 N. Y. Supp. 112; *Commonwealth* v. *Plaisted*, 148 Mass. 375; 12 Am. St. Rep. 566; *State* v. *Yopp*, 97 N. C. 477; 2 Am. St. Rep. 305; *State* v. *White*, 15 Am. & Eng. Corp. Cas. 9; *State* v. *Earnhardt*, 107 N. C. 789; 1 Dillon on Municipal Corporations, 3d ed., sec. 374, note; *Commonwealth* v. *McCafferty*, 145 Mass. 384; *Commonwealth* v. *Abrahams*, 156 Mass. 57; *Pedrick* v. *Bailey*, 12 Gray, 161; *Town Council* v. *Pressley*, 33 S. C. 56; 26 Am. St. Rep. 659; *Ex parte Smith*, 38 Cal. 702; *In re Linehan*, 72 Cal. 114; *Ex parte Delaney*, 43 Cal. 478; *Ex parte Casinello*, 62 Cal. 538; *Nightingale, Petitioner*, 11 Pick. 168; *Commonwealth* v. *Brooks*, 109 Mass. 355; *Quincy* v. *Kennard*, 151 Mass. 563; *Hasty* v. *City of Huntington*, 105 Ind. 540; *Town of Palatine* v. *Kreuger*, 121 Ill. 72; 2 Dillon on Municipal Corporations, 3d ed., sec. 713; *White* v. *Kent*, 11 Ohio St. 550; *Lowell* v. *Simpson*, 10 Allen, 88; *St. Paul* v. *Smith*, 27 Minn. 364; 38 Am. Rep. 296; *Richmond etc. R. R. Co.* v. *Richmond*, 96 U. S. 521; *Reynolds* v. *United States*, 98 U. S. 145.)

McFARLAND, J.,—The petitioner is under sentence of imprisonment for a violation of an ordinance of the city of Redlands, and seeks to be discharged on *habeas corpus*

upon the ground that said ordinance is wholly invalid and void.

The ordinance is entitled "An ordinance to promote safety and security to public travel by prohibiting the beating of drums and certain other noises on the traveled streets or avenues of the city of Redlands, without special permission therefor, and authorizing such permission in certain cases"; and in the body of the ordinance it is made an offense punishable by fine or imprisonment for any person to, among other things, " beat a drum" upon any traveled street of the city "without special permit in writing so to do first had and obtained from the president of the board of trustees of said city, which permit the president of said board may grant whenever, in his judgment, the issuance of the same shall not conflict with the aforesaid purposes of this ordinance, and not otherwise, provided, that such permit shall specify the time when, and the street or avenue where, any of said instruments shall be so used as aforesaid." Petitioner was convicted of beating a drum on the traveled streets of said city without a permit, contrary to the said provisions of said ordinance. It appears from the petition that petitioner had been in the habit of beating a drum on the streets daily; and that upon his application to the president of the board for a permit " to engage in beating a drum, as he had been heretofore doing," the permit was refused, although, as appears from the petition, he was given a permit to beat his drum upon a certain occasion. He claims the right to beat his drum—not on special occasions only, as other people—but every day, without a permit, and despite the ordinance.

There is no need of discussing the general power and right of a city to prohibit such noises on the streets as those made by the beating of drums. We do not understand counsel for petitioner as contesting such power. At all events it certainly exists. But the point urged by petitioner is that the ordinance is void, because it gives a certain officer authority to give permits

to beat drums on special occasions; and this position
is the only one which needs examination. It is con-
tended that the clause authorizing a permit is partial
and oppressive because it gives too much power to the
president of the board, and is violative of general con-
stitutional principles against abridging the privileges
of citizens, depriving a person of his rights without due
process of law, denying him the equal protection of the
law, etc.

The continuous or daily beating of drums on the
streets of a city would be an intolerable nuisance,
endangering the safety of teams and the occupants of
vehicles drawn by animals, as well as of pedestrians
liable to be injured by runaways, and stunning the ears
with din so constant as to be almost insufferable. On
the other hand there is usually no objection to such
noises on a few special occasions, either when there
are patriotic celebrations generally participated in by
all the people, or processions of a part of the people
united in civic societies, political parties, etc. These
occasions are comparatively few and usually well known,
so that people are prepared for them; and the processions
and drums are generally preceded by policemen who
give notice of the approaching uproar. But how can
these occasions be provided for? By an ordinance
which shall anticipate and state in detail beforehand
every occasion on which the noises may be made?
Such a thing is practically impossible. No human fore-
sight could conjure up all the circumstances under
which the people might want a band (with a drum) on
the streets. It would not do to name legal holidays
alone; that, for obvious reasons, would be too narrow a
provision. Neither would it do to single out, in addi-
tion to legal holidays, certain other enumerated days,
as, for instance, the first Monday of every month; the
president of the United States or some other distin-
guished man whose advent should be celebrated with
drums might come on Tuesday. Neither would it be
possible to schedule the kinds or characters of occasions

CV. CAL.—36

of which drumbeats would be a necessary part. And so the practical result of petitioner's contention is that all persons must be allowed to beat drums on all occasions as they may choose, or no person must be allowed to beat a drum on any occasion whatever.

In dealing with this and similar questions—such as repairs of wooden buildings within fire limits, carrying concealed weapons, using public buildings and grounds, ringing bells on buildings where many operatives are employed, haranguing on the streets by lecturers, preachers, etc., singing or playing on musical instruments on the streets, and the like—our federal, state, and municipal governments have always recognized the practical impossibility of providing in advance for proper exceptional cases, and the necessity of giving to a public officer some discretion in the premises; and laws and ordinances based on that principle have nearly always been upheld when subjected to judicial test. Laws are not made upon the theory of the total depravity of those who are elected to administer them; and the presumption is that municipal officers will not use these small powers villainously and for purposes of oppression and mischief. Of course it is impossible to state in terms the extent or the limitation of what is known as the police power; and courts have not attempted to do it. Whether or not that power has been exceeded in particular cases must be determined as the cases arise; and, to find the law applicable to a particular case, we must look to see what courts have held in similar cases. And we find that statutes and ordinances similar in character to the one in question in the case at bar have been sustained in most of the cases to which our attention has been called. We will notice a few of them. Statutes and ordinances have been sustained prohibiting awnings without the consent of the mayor and aldermen (*Pedrick* v. *Bailey*, 12 Gray, 161); forbidding orations, harangues, etc., in a park, without the prior consent of the park commissioners (*Commonwealth* v. *Abrahams*, 156 Mass. 57), or upon the common

or other grounds except by the permission of the city government committee (*Commonwealth* v. *Davis*, 140 Mass. 485); ".beating any drum or tambourine, or making any noise with any instrument for any purpose whatever, without written permission of the president of the village" on any street or sidewalk (*Vance* v. *Hadfield*, 22 N. Y. 858, 1003; 4 N. Y: Supp. 112); giving the right to manufacturers and others to ring bells and blow whistles in such manner and at such hours as the board of aldermen or selectmen may in writing designate (*Sawyer* v. *Davis*, 136 Mass. 239; 49 Am. Rep. 27); prohibiting the erecting or repairing of a wooden building without the permission of the board of aldermen (*Hine* v. *City of New Haven*, 40 Conn. 478); authorizing harbor masters to station vessels and to assign to each its place (*Vanderbilt* v. *Adams*, 7 Cow. 349); forbidding the occupancy of a place on the street for a stand without the permission of the clerk of Faneuil Hall Market (*Nightingale, Petitioner*, 11 Pick. 168); forbidding the keeping of swine without a permit in writing from the board of health (*Quincy* v. *Kennard*, 151 Mass. 563); forbidding the erection of any kind of a building without a permit from the commissioners of the town through their clerk (*Commissioners etc.* v. *Covey*, 74 Md. 262); forbidding any person from remaining within the limits of the market more than twenty minutes unless permitted so to do by the superintendent or his deputy (*Commonwealth* v. *Brooks*, 109 Mass. 355). In *Barbier* v. *Connolly*, 113 U. S. 27, the supreme court of the United States had under consideration an ordinance which, among other things, prohibited the carrying on of the business of a laundry without certificates from the health officer and the board of fire wardens; and, while that part of the ordinance was not directly involved, the court say as follows: "In the case before us the provisions requiring certificates from the health officer and the board of fire wardens may, in some instances, be unnecessary, and the changes to be made to meet the conditions prescribed may be burdensome, but, as we

have seen, this is a matter for the determination of the municipality in the execution of its police powers, and not the violation of any substantial right of the individual." Many other authorities to the same point as those above noticed might be collected outside of the decisions in our own state.

In this state it was held in *Ex parte Casinello*, 62 Cal. 538, that an ordinance giving to the superintendent of public streets the power to determine where, either on a public street or on private premises, any person could deposit "any glass, broken ware, dirt, rubbish, garbage, or filth," was a salutary and valid "police regulation." In the case of *In re Guerrero*, 69 Cal. 88, it was held that the city council had authority to make the issuance of a license for the sale of liquors conditional upon the appellant's obtaining a permit from the board of police commissioners. In *Ex parte Tuttle*, 91 Cal. 589, an ordinance prohibiting the selling of pools on horseraces except within the inclosure of a racetrack where the race is to be run was upheld, and it was declared not to be void because its effect might be "to confer a special privilege or benefit upon those who own or control the racecourses." In *Ex parte Fiske*, 72 Cal. 125, an ordinance was upheld which prohibited the repair of a wooden building within certain fire limits without permission in writing signed by a majority of the fire wardens, and approved by a majority of the committee on fire department and the mayor. In that case we said as follows: "It is clear, however, that a literal compliance with the regulation prohibiting the repairing of a wooden building might work, in some instances, useless hardships. The repair of a leaking roof or a broken window would be necessary to the comfort and health of a family, without enhancing the danger which the framers of the ordinance sought to provide against; and repairs of a more extensive character might be made to particular houses standing in particular localities, without increasing the fire risks. And it is equally clear that no general rule could be established beforehand

that would meet the emergencies of individual cases.
Therefore, the power to give relief in particular instances
is conferred on certain officers; and it is not to be pre-
sumed that they will exercise it wantonly, or for pur-
poses of profit or oppression." In *Ex parte Christensen*,
85 Cal. 208, this court upheld an ordinance prohibiting
the business of a retail liquor dealer unless he procured
the permission of a majority of the board of police com-
missioners, or, upon their refusal, the permission of
twelve property owners in the block.

The foregoing authorities, in our opinion, clearly es-
tablish the validity of the ordinance here in question.

Counsel for petitioner rely on some cases, particularly
*State* v. *Dering*, 84 Wis. 585, 36 Am. St. Rep. 948, and *In
re Frazee*, 63 Mich. 396, 6 Am. St. Rep. 310, which, at
first blush, seem to conflict with the general current of
authorities as above presented. But upon closer ex-
amination they will be found to go upon a distinction
or principle, whether sound or not, that is not appli-
cable to the case at bar. They are based upon the theory
that the lawful inherent rights of men cannot be entirely
suppressed or destroyed by statute or ordinance, but can
only be *regulated*, and that all regulations of such rights
must be uniform, etc. The cases cited all deal with
ordinances regulating the right of the people to have
*processions or parades* in the streets; and it is this right
that is discussed, although the accompaniment of music
is mentioned in some of the ordinances. In *State* v.
*Dering*, 84 Wis. 585, 36 Am. St. Rep. 948, the petitioner
"was convicted of *parading* the streets." Now, the
public have an undoubted right to *travel* on the street;
that is what a street is for. And to march along a street
in a procession is merely to exercise the right to travel
on it. Therefore, if the cases under review be sound,
this right can only be regulated, and cannot entirely be
suppressed; and the regulation must be uniform, al-
though it is difficult to understand how the crowded
streets of a city could be practically regulated in this
respect without vesting some discretion in the police

authorities. At all events, the cases referred to deal with a right. But the proposition that a man has a natural, ingrained, inviolate, common law or constitutional right to beat a drum on the traveled streets of a city has no foundation in reason or authority. As, therefore, it is not a right that may not be entirely suppressed, it may be regulated as the law-making power may determine. In *Ex parte Tuttle*, 91 Cal. 589, it was held that, as betting on horseraces was demoralizing in its tendencies and an evil, it could be suppressed by ordinance; and that, as it could be suppressed, no one could be heard to complain of an ordinance regulating it because thereby special privileges accrued to particular persons. And in *Ex parte Christensen*, 85 Cal. 208, this court distinctly declared that such is the rule. The court said: " The objection is that this makes the license depend upon the arbitrary will and pleasure of the board of fire commissioners. . . . . But whatever force this objection might have in reference to licenses to carry on the ordinary vocations of life, which are not supposed to have any injurious tendencies, it has no force in the present case. It is well settled that the governing power may prohibit the manufacture and traffic in liquor altogether, provided only it does not interfere with interstate commerce. And, if the governing power can prohibit a thing altogether, it can impose such conditions upon its existence as it pleases. . . . . Even if it be conceded that the conditions were arbitrary, they were within the power of the board."

In the ordinance involved in the case at bar there is no attempt to suppress processions or parades. It does not interfere with travel, but seeks to promote the comfort, convenience, and safety of travelers, by preventing that which makes traveling uncomfortable and dangerous. Its provisions do not affect private premises, but refer solely to public traveled streets. It prohibits no business which every one has a right to pursue. As the wants and comfort and pleasure of the public require that the thing prohibited, although in the abstract injuri-

ously annoying, should on special occasions be allowed, the ordinance provides for permitting the thing to be done on such occasions; and the granting of such privileges is not taking away the right to do the thing from others, because they have no such right.   When the public welfare requires it a nuisance may, for special purposes, be permitted.   (*Pittsburgh etc. R. R. Co.* v. *Brown,* 67 Ind. 45; 33 Am. Rep. 73; *Sawyer* v. *Davis,* 136 Mass. 239; 49 Am. Rep. 27.)   As all such occasions cannot be foreseen and provided for by special enactment, some small discretion in the premises is granted to a certain officer; and that discretion to grant a permit is limited to instances where "the issuance of the same shall not conflict with the aforesaid purposes of this ordinance," viz., "to promote safety and security to public travel."   The validity of such an ordinance is clearly established by the current of authorities, some of which are hereinbefore cited.   It is entirely within the reasoning of the supreme court of the United States in *Crowley* v. *Christensen,* 137 U. S. 86, which case also furnishes an answer to petitioner's claim of support from *Yick Wo* v. *Hopkins,* 118 U. S. 373.

In our opinion the ordinance here involved is valid, and the petitioner should be remanded.

The writ is dismissed, and the petitioner remanded to the custody of the marshal.

GAROUTTE, J., VAN FLEET, J., and BEATTY, C. J., concurred.

HARRISON J., dissenting.—The authority of the city to make police regulations is given by the constitution, and, although it is derived directly from the people, instead of mediately through the legislature by means of the municipal government act, yet it is a legislative power, and, like any other legislative power, is to be exercised by the body to which the power has been intrusted.   The power to make laws is a sovereign power, and its exercise by the legislative body of a municipality,

being a delegated power, cannot be delegated to any other body or individual. Mr. Dillon says (Dillon on Municipal Corporations, 96): "The principle is a plain one that the public powers or trusts devolved by law or charter upon the council or governing body, to be exercised by it when and in such manner as it shall judge best, *cannot be delegated to others.*" Mr. Cooley says (Cooley's Constitutional Limitations, 248): "So far as its functions are legislative, they rest in the discretion and judgment of the municipal body intrusted with them, and that body cannot refer the exercise of the power to the discretion and judgment of its subordinates, or of any other authority." This inhibition includes, not only the ordinance itself, which is to be adopted, but also the individuals upon whom it is to operate, as well as the times and places in which it is to be in operation. The legislative body of the municipality cannot delegate to one of its members, or to any executive officer of the city, the power to determine whether an ordinance shall be operative upon certain individuals, or at certain times, any more than it can delegate to him the power to determine whether the ordinance shall be adopted, or shall have any operation; nor can it confer upon such officer the power to exempt any individual that he may choose from the operation of the ordinance. "No man's rights can be submitted under a constitutional government to the discretion of anybody." (*Robison* v. *Miner*, 68 Mich. 556.) Whenever the question has been presented for determination it has been uniformly held that an ordinance which confers upon an executive officer of the city the right to determine by his own will whether it shall be in operation or not in the particular cases to which it is directed is invalid. If the act covered by the ordinance is one which the individual has no inherent right to perform, or which the municipality may prohibit altogether, a privilege to perform the act may be made to depend upon a compliance with certain conditions, or the previous approval of another officer. If, however, the act

is lawful or proper in itself, and improper only as it
may affect the public, the power of the municipality is
limited to a regulation of its exercise, and such regula-
tion must be indicated by fixed and definite rules, and
cannot be left to the arbitrament of any officer. This
rule is not to be confounded with the execution of the
ordinance by the officers intrusted therewith. The en-
forcement of the ordinance by the executive officer of
the city is entirely distinct from determining whether
the ordinance when adopted shall be in force. The
policeman may have a discretion to determine whether
an obstruction of the streets by an individual is such a
violation of an ordinance forbidding the obstruction as
will warrant his arrest, but neither he nor any other
officer can have the power to determine whether the
ordinance itself shall be suspended for the benefit of
that individual, or whether he will give to such individ-
ual the right to disregard the ordinance. The right of
the harbor master to station vessels at different points
in the harbor, or of the policeman to prescribe the order
of carriages at a theater, or of the superintendent of
streets to designate a place for dumping garbage, is not
the exercise of a legislative power, but rather the act of
an executive officer to enforce the ordinance.

Accordingly, it has been held that an ordinance con-
ferring upon the mayor the right to determine whether
a stationary steam-engine should be removed was void,
as conferring upon him a power which could only be
exercised by the city council (*Mayor of Baltimore* v.
*Radecke*, 49 Md. 217; 33 Am. Rep. 239); that an ordi-
nance providing that no person should erect any build-
ing within the city limits without having obtained per-
mission from the board of aldermen is void, since it
does not prescribe a uniform rule of action for gov-
erning the exercise of their discretion (*State* v. *Tenant*,
110 N. C. 609; 28 Am. St. Rep. 715); that an ordinance
forbidding the erection of livery stables in any block
without the consent of the owners of land in the block
is invalid (*City of St. Louis* v. *Russell*, 116 Mo. 248);

that an ordinance making it unlawful for persons to parade a public street, singing or beating drums, or playing upon musical instruments, without having obtained the consent of the mayor, is void upon the ground that it does not fix the conditions uniformly and impartially, and is unreasonable (*Anderson* v. *City of Wellington*, 40 Kan. 173; 10 Am. St. Rep. 175; *Matter of Frazee*, 63 Mich. 396; 6 Am. St. Rep. 310; *Rich* v. *City of Naperville*, 42 Ill. App. 222; *State* v. *Dering*, 84 Wis. 585; 36 Am. St. Rep. 948); that an ordinance that no parades or processions shall be allowed upon the streets without a permit from the police department is invalid, because it leaves the power of restraining processions to an unregulated official discretion, when the whole matter, if regulated at all, must be by permanent legal provisions operating generally and impartially (*City of Chicago* v. *Trotter*, 136 Ill. 430).

There are many cases in which ordinances containing such a provision have been upheld, but in these cases the effect of such a provision upon the ordinance was not considered by the court, the only question presented to it for its consideration being the validity or invalidity of the ordinance upon other grounds. In these cases the act of the court in sustaining the ordinance cannot be regarded as an affirmance of the power to include this provision. Ordinances relating to health and security from fire, which prohibit certain acts without a permit from officers in charge of those departments, have been sustained upon the ground that the safety of the citizen from disease and fire were of a peculiar character, demanding the supervision of officers particularly skilled in reference thereto, and to whose judgment the matter could be more appropriately referred. The principles applicable to these ordinances, and under which they may be upheld, have, however, no application to the ordinance under discussion. There is another line of cases in which ordinances have been upheld which reserved to the city council, or to the legislative body itself, the power to ex-

empt individuals from their operation. This is, how-
ever, entirely consistent with the principle above laid
down. It is not a delegation of legislative authority,
but is an exercise of that authority by the legislative
body itself. In the absence of any restrictions upon its
exercise of the legislative power intrusted to it the city
council has the same power to enact ordinances appli-
cable only to special portions of the city, or to designated
classes or individuals, as would the legislature of the
state in the absence of constitutional restrictions; and
it may equally enact an ordinance exempting individ-
uals or classes from the operation of an ordinance, or
suspending the operation of the ordinance entirely.
This rule also includes another class of cases in which
an exemption from the ordinance is made by some par-
ticular branch of the city government. The entire legi-
islative power which is delegated to a municipality is
not always conferred upon the city council. It may
be portioned out to the different departments of the
city, and authority conferred upon those departments
to legislate upon the matter peculiarly intrusted to their
care. The park commissioners may have exclusive au-
thority to determine the manner and times in which the
parks shall be used. The health department may have
the authority to enact sanitary regulations for the entire
city. Similar powers may be intrusted to the school
department, the harbor commissioners, the police com-
missioners, for the enactment of ordinances relating to
certain subjects.

The ordinance under consideration falls within the
rule hereinbefore referred to, and should be declared
invalid. It confers upon the president of the board of
trustees the power to suspend its operation in favor of
any individual, whenever he may elect, and to deny the
same favor to another who may be equally entitled to
its suspension. It, in fact, confers upon him the power
to determine the extent to which the ordinance shall be
operative, which is in reality the power to determine
whether there shall be such an ordinance. The only

limitation upon the exercise of this power is his own judgment that the permit will not conflict with the purposes of the ordinance. This is a pure and simple delegation to him of the legislative power which has been conferred upon the trustees themselves. It is not enough to say that it must be presumed that this officer will act properly. The question is not whether a power that has been conferred will be properly exercised, but whether there has been any authority given to confer the power. If there has not it is no answer to say that it will not be abused. In a country under the government of laws the conduct of its citizens cannot be subjected to the arbitrary will of any individual. The mildest despotism has no place in a constitutional government. Beating a drum is not a nuisance *per se,* or a violation of the rights of others, and it does not of necessity interfere with the usual and proper use of the public streets. The authority of the trustees of the city to regulate the use of the streets or the beating of drums thereon is not denied, but the " regulation" must be made by the city, and cannot be delegated by it to the president of the board of trustees.

In my opinion the ordinance is invalid, and the prisoner should be discharged.

De Haven, J., and Fitzgerald, J., concurred.