PACIFIC STATES SUPPLY CO. v. CITY AND COUNTY OF SAN FRANCISCO et al.

(Circuit Court, N. D. California. July 26, 1909.)

No. 14,811.

1. MUNICIPAL CORPORATIONS (§ 622*)—QUARRIES—REGULATION—ORDINANCES.

A city ordinance, prohibiting the maintaining or operating of a stone quarry within the city limits, is invalid as an attempt to prohibit, rather than regulate, a legitimate business.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 622.*]

2. MUNICIPAL CORPORATIONS (§ 594*)—POLICE POWER—REGULATORY ORDINANCE.

Where a thing to be regulated by a city ordinance is of a character either inherently or by reason of its use calculated to endanger the health, safety, comfort, or welfare of the public, and the conditions and circumstances under which the danger arises are not susceptible of being foreseen and made the subject of uniform prescription and limitations, an ordinance regulating the same is not invalid for failure to prescribe such uniform limitations and prescriptions and leaving them to the discretionary determination of an appropriate board or officer.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 594.*]

3. MUNICIPAL CORPORATIONS (§ 595*)—BLASTING—REGULATION—POLICE POWER.

While blasting is not so inherently dangerous as to constitute a nuisance per se, its regulation within the limits of a populous city was nevertheless within the city's police power, and hence a city ordinance, prohibiting blasting within certain portions of the city, except under a permit to be granted by the board of supervisors, was a valid exercise of such power.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 595.*]

4. INJUNCTION (§ 7*)—SCOPE OF REMEDY—PUBLIC OFFICIALS—ARBITRARY ACTION.

Where city authorities arbitrarily refused to grant complainant a blasting permit under a valid city ordinance prohibiting blasting in a city without such permit, complainant's remedy was at law to compel the issuing of a permit, if the facts warranted it, and not in equity to restrain the city authorities from enforcing the ordinance.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 7.*]

In Equity.

This is an application by the complainant for an injunction pendente lite to restrain the defendants, the city and county of San Francisco and its chief of police, from interfering by arrest or otherwise with the officers and employés of the complainant in operating a rock quarry and rock crushing plant within the municipality.

So far as material to be stated, the amended bill alleges, in substance: That at all times covered by its allegations the complainant was in posses-

---

sion of certain lands therein described situated within the corporate limits of the city and county of San Francisco, holding the same under a 10-year lease from April 1, 1907, upon which is situated a deposit or quarry of rock of value for use and sale for use in the construction of buildings and other designated purposes, and for which there was great demand, with the right in complainant to extract, use, and dispose of the same for such purposes; that upon said property complainant has an extensive plant, consisting of all necessary machinery and appliances for the removal and crushing of such rock; that but for the defendants' acts and interferences complained of complainant's rights under said lease would be of a value of over $50,000, and its said plant of a value of over $28,000; that the value of the matter in controversy greatly exceeds the sum of $2,000; that it is necessary to the successful and proper operation of said quarry that blasting powder or dynamite be used in blasting thereon to detach and remove the rock therefrom, and for that purpose to keep and store thereat a sufficient quantity of such explosives for such requirements; that the rock crushing plant cannot be successfully operated otherwise than by the use of steam, electric, or other motive power; that the operation of said quarry and said plant by the means aforesaid can be safely carried on without danger, inconvenience, discomfort, or injury to persons or property; and that at the time of the interference complained of, and for some time prior thereto, complainant was working and had worked said quarry and blasted. and removed the rock therefrom and crushed the same on said premises without causing any such injury or damage.

It is alleged: That in October, 1908, the defendants wrongfully and unlawfully and without any authority or right so to do notified complainant that it would not be permitted to blast in said quarry, or drill holes therein, or to crush rock thereat, or to "in any way" operate the same; that, if complainant should attempt to further carry on such work, defendants would arrest the officers, employés, and servants of the complainant and all persons connected in any way with the operation of said quarry, and would make such arrests upon each and every occasion that any attempt should be made to so operate the said quarry; that defendants stationed and maintained policemen at said quarry to prevent the operation of the same, and arrested the servants of the complainant for drilling in said quarry, and prevented and still prevent complainant, its officers, servants, and employés, from "in any way" operating the said quarry or rock crushing plant; and that by reason of such acts of defendants the complainant is wholly deprived of the use and enjoyment of its rights under its lease of said property and the use of its said plant.

It is alleged: That the defendants justify their refusal to permit the complainant to blast, drill, or crush rock at the said quarry under four certain ordinances of the city and county of San Francisco which are set out in full in the bill, the material part of the first of which, known. as the "blasting ordinance," makes it a misdemeanor "for any person, firm, or corporation to explode or cause to be exploded, any powder or other explosive material for the purpose of blasting, or drill a hole, or make a crevice, for the purpose of inserting any powder or other explosive material for the purpose of blasting, or insert in any hole or crevice any fuse or any powder, or other explosive material for the purpose of blasting, without first obtaining from the board of supervisors a permit so to do, which permit must specify the location of the blast or blasts for which it is granted," and providing for the giving of a bond by the applicant before receiving a license, for the protection of any person or property injured by the acts done under such permit. The second makes it a misdemeanor for any person, company, or association to maintain or operate any rock or stone quarry within certain designated portions of said city and county, within which designated territory it is alleged that complainant's quarry is situated. The third makes it a misdemeanor for any person, company, or association to establish, maintain, or use any rock crushing machine "operated by steam, gas, electric, vapor, or other motive power," within a certain designated portion of said city and county, within which territory, it is alleged, the complainant's quarry and plant are situated. And the fourth makes it a

misdemeanor for any person, firm, company, or corporation "to manufacture, or cause to be manufactured, or bring or cause to be brought into, or receive or keep or store, or suffer to remain within the limits of the city and county of San Francisco, any blasting powder, hercules or giant powder, nitroglycerin, daulin, dynamite, or any other explosive liquid or material or compound, having an explosive power greater than that of ordinary gunpowder," except within a certain designated portion of said city and county, without which designated territory, as alleged, complainant's quarry is situated.

As to the first of the ordinances above referred to, it is alleged: That it is contrary to section 1 of the fourteenth amendment to the Constitution of the United States, and arbitrarily and unlawfully interferes with the use of said property by complainant, and with the lawful occupation of complainant in working the same, and imposes unusual and unnecessary restrictions upon such lawful occupation, in that it contains no regulations, rules, or conditions whatsoever for the granting of a permit to do any of the things prohibited thereby, but leaves the question of granting such permit to the arbitrary discretion and determination of the board of supervisors of said city and county, and does not admit of the doing of any of the said prohibited acts by all citizens alike who will comply with certain prescribed regulations, rules, or conditions. That ever since it was enacted it has been, and still is, applied and administered by defendants with an unequal hand and with unjust and illegal discrimination between persons in similar circumstances, material to their rights, in that the board of supervisors of said city and county has granted, and still does grant, permits for the doing of all said prohibited acts in various parts of the city and county, and in locations where such acts cannot be done as safely and as free from danger as regards the interest and welfare of persons and property as the same can be done at the quarry of complainant; a number of specific instances of the granting of such permits to parties other than the complainant for the carrying on of like operations being set forth in the bill. And it is alleged that by reason of the character of said ordinance and the arbitrary, unjust, and discriminating manner of its enforcement, it unlawfully abridges the privileges and rights of complainant as a citizen of the United States, deprives it of its property without due process of law, and denies it the equal protection of the law, contrary to section 1 of the fourteenth amendment of the Constitution of the United States. Similar allegations, so far as pertinent to their terms, are made as to the illegality of and the arbitrary and unequal manner of administering each of the other ordinances referred to.

It is further alleged: That notwithstanding the invalidity of said several ordinances complainant, after the commencement of the interferences alleged, in order to prevent a repetition of the same and avoid the necessity of resorting to a court of equity, filed a petition with said board of supervisors setting forth the location of its quarry, and its situation with reference to other surrounding property and other proper facts in relation thereto tending to sustain complainant's right to a permit to operate the same and requested the said board to examine said quarry and inspect the manner of working the same by complainant and to thereupon grant a permit to operate the same; "but that the said board of supervisors arbitrarily and unreasonably refused to consider the said petition or to allow your orator to show it the manner in which it proposed to drill holes, blast rock, and crush rock at said quarry, and arbitrarily and unreasonably refused to consider the rights of your orator in the premises or to grant your orator any permit to operate the said quarry." And it is alleged that, unless defendants are restrained from the acts and interferences complained of, they threaten to and will continue to prevent the complainant, its officers, employés, and servants, from operating the said quarry, and will thus entirely deprive complainant of the use and enjoyment of its property. An injunction both preliminary and final is prayed.

In response to the order to show cause, defendants appeared, by the city and county attorney, and demurred to the bill on several grounds, including that of want of equity, and likewise presented a large number of affidavits in opposition to the granting of the writ. These latter having been answered

by the complainant, the matter has been argued and submitted, both upon the demurrer and upon the merits of the application.

Walter H. Linforth and Samuel M. Shortridge, for complainant.
Percy V. Long, City and County Atty., and Jesse H. Steinhart, Asst. City and County Atty., for defendants.

VAN FLEET, District Judge (after stating the facts as above). As to the merits of the application, while I may say in passing that, in view of the counter showing made by defendants, I am satisfied the court would not be justified in granting a preliminary writ, I do not feel called upon to discuss that feature of the case, since in my judgment the questions raised by the demurrer cut deeper and render it necessary to dismiss the bill as not stating a case for equitable relief. The sufficiency of the bill turns upon the question whether the ordinances under which defendants have justified for the acts complained of show a valid exercise of the police power by the municipal authorities; not necessarily that all those ordinances are valid, but such one or more of them as may be essential to sustain the action of the authorities in stopping the work which complainant was engaged in at the time of the interference, and which it claims the right to prosecute. It is not material, under the case made by the bill, that the ordinance undertaking to prohibit the maintaining or operating of a rock quarry may be void as beyond the power of the municipality to enforce. If the justification of the acts of defendants rested upon that ordinance alone, it may be admitted that it would fail, since it is obvious, as held by the Supreme Court of California, that the ordinance is void as an attempt to prohibit, rather than regulate, a perfectly legitimate business. Ex parte Kelso, 147 Cal. 609, 82 Pac. 241, 2 L. R. A. (N. S.) 796, 109 Am. St. Rep. 178. But while the bill alleges in terms that defendants' acts have prevented and will prevent complainant from "in any way" operating its quarry, the several averments of the bill taken together show that the work stopped by defendants was the operation of the quarry by means of blasting with explosives, and that this is the only agency through which complainant has attempted to operate its quarry, or by which the rock thereon can be successfully extracted. Nor is it material to inquire as to the validity of the ordinance prohibiting the maintenance or operation of a rock crushing machine in the part of the city in which complainant's property is located, since the bill discloses that the right to operate that feature of its property is only claimed by or valuable to complainant as an incident to and in connection with its right to operate its quarry by the means aforesaid; that without the latter right the former is of no material consideration. It results therefore that the only material inquiry presented is as to the validity of the ordinance prohibiting blasting, since, if complainant cannot employ that method in operating its quarry, the right to keep or store the explosives prohibited by the last of the ordinances pleaded is of no value or concern to it.

These considerations are recognized by complainant in its presentation of its case. At the threshold of its brief, it is said:

"Assuming, for the purpose of this point, as we must, that all of the ordinances under which the defendants justify their right to interfere with the

operation of the quarry are invalid, the case presented by the bill, so far as this point is concerned, is simply one to prevent the municipality and its officers, under the guise of invalid ordinances, from interfering with the complainant's right of property, and from depriving the complainant of such rights of property and utterly destroying the same."

This proposition being true, the converse of it follows, that if either one of the ordinances justifies the acts of defendants, and that regulation is found to be valid, the complainant must fail, and a consideration of the others becomes immaterial.

In pursuance of this theory, the stress of the argument by both parties is devoted to the question as to the validity of the so-called "blasting ordinance." That this ordinance embodies a perfectly proper and valid exercise of the police power I entertain no doubt. No question is made but that the defendant municipality is invested under the Constitution and laws of the state with competent and plenary power to make and enforce all suitable and proper regulations of the kind, not in conflict with general laws, deemed necessary for the protection of the health, safety, and well-being of its inhabitants; but the sum and substance of complainant's objections to this particular ordinance, as indicated by the averments of the bill and contended for in argument, are: First, that the ordinance prescribes no fixed or uniform rules or regulations under which all applicants alike may be awarded the privilege of engaging in the occupation to which it relates, but leaves the determination of the question whether a permit shall be granted in any instance to the absolute will and arbitrary discretion of the board of supervisors without any controlling limitation whatsoever, which it is contended is in excess of a proper exertion of the police power and renders the ordinance void upon its face; and, second, that, even if valid in form, the ordinance is void because of the partial and arbitrary manner in which, as alleged in the bill, it is administered and enforced.

It is obvious to my mind that the first of these objections ignores the nature and character of the business or operations with which this this ordinance undertakes to deal. It is quite true that where the state undertakes to regulate a business or thing lawful in itself and not ordinarily obnoxious or hazardous to public health, safety, or comfort, and which may be usually and ordinarily done or carried on without harm, under regulations common to all in like circumstances, and which circumstances may be readily foreseen and provided for by the lawmaking power, a by-law or ordinance intended to regulate such business or act must in order to be valid keep within those limitations; but where the thing regulated is of a character, either inherently, or by reason of the agencies necessary to be employed, that the prosecution of the business or doing of the act under certain conditions and circumstances is calculated to endanger the health, safety, comfort, or welfare of the public, and those conditions and circumstances are not in their nature susceptible of being foreseen and made the subject of uniform and common prescription, then those limitations may be departed from, and the right to the prosecution of such an enterprise or performance of such an act may be competently left by the lawmaking body to the discretionary determination of some appropriate board or officer, without endangering the validity of the regulation.

The ordinance in question obviously, as it seems to me, falls within the latter category, and in no way transgresses the constitutional limitations urged against it. While blasting is not perhaps so essentially and inherently dangerous under all circumstances as to constitute a nuisance per se, it is nevertheless, by reason of the necessity of employing the agency of high explosives, universally recognized as a work which, under certain conditions and surroundings, may be and is attended by great danger and hazard to people and property in the near vicinity of its prosecution; and it is quite obvious that, as applied to a thickly populated district such as is comprised within the greater part of the territory of the city and county of San Francisco, it would be impossible for the city authorities to foresee and prescribe by fixed rule the conditions under which, and the district within which, the work could in all instances be permitted with safety. Under such circumstances the work must either be entirely prohibited, or, as in this instance, the discretion lodged in some proper functionary to determine as occasion arises under what circumstances and in what particular localities it may, with due regard for the rights of others, be permitted to be carried on; and but for the right so to provide no adequate provision could, in many instances, be made for the protection of the rights of the public.

The principles which uphold such regulations are well recognized and thoroughly established, and have been applied not only to by-laws and ordinances regulating the industry here involved, but to many others of a kindred character; and regulations of this character have been uniformly upheld as not obnoxious to the objection that they in any just sense infringe upon the constitutional provisions as to the rights of property here invoked.

In Commonwealth v. Parks, 155 Mass. 531, 30 N. E. 174, the Supreme Judicial Court of Massachusetts sustained a municipal ordinance of precisely similar import to that here involved, prohibiting blasting within the city of Somerville without the written consent of the board of aldermen, as being fully within the police power of the state, conferred by proper legislative enactment upon the municipality; and the court, speaking through Mr. Justice Holmes (now an associate justice of the Supreme Court of the United States), in response to objections against the constitutionality of the regulation of like character to those here urged, say:

"It is settled that within constitutional limits not exactly determined the Legislature may change the common law as to nuisances, and may move the line either way, so as to make things nuisances which were not so, or to make things lawful which were nuisances, although by so doing it affects the use or value of property. Sawyer v. Davis, 136 Mass. 239, 49 Am. Rep. 27; Rideout v. Knox, 148 Mass. 368, 19 N. E. 390, 2 L. R. A. 81, 12 Am. St. Rep. 560. It is still plainer that it may prohibit a use of land which the common law would regard as a nuisance if it endangered adjoining houses or the highway, and the Legislature may authorize cities and towns by ordinances and by-laws to make similar prohibitions. Salem v. Maynes, 123 Mass. 372, 374; Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923. Furthermore, what the municipal body may forbid altogether it may forbid conditionally, unless its written permission is obtained beforehand. We see nothing in Newton v. Belger, 143 Mass. 598, 10 N. E. 464, or Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220, and Baltimore v. Radecke, 49 Md. 217, 33 Am. Rep. 239, to

make us doubt the correctness of the decision in Quincy v. Kennard, 151 Mass. 563, 24 N. E. 860. Nor do we think it matters that the permission required is that of the aldermen, and not that of the whole city council.

"In view of the foregoing principles and decisions, we are of opinion that the power, when deemed for public safety, to prohibit blasting rocks with gunpowder without written consent, is among the powers given by Pub. St. c. 27, § 15."

And it was held that the prohibition was not such a taking of property as to be beyond the police power, nor a trenching upon the rights of ownership to such an extent as to necessarily require compensation.

In the case of In re Flaherty, 105 Cal. 558, 38 Pac. 981, 27 L. R. A. 529, the Supreme Court of California, having under consideration a municipal ordinance forbidding the beating of drums in the traveled streets of a city without the permission of the president of the board of trustees of the municipality, held it to be a valid exercise of the police power, and in discussing the principal objection here made it is said:

"But the point urged by petitioner is that the ordinance is void because it gives a certain officer authority to give permits to beat drums on special occasions, and this position is the only one which needs examination. It is contended that the clause authorizing a permit is partial and oppressive because it gives too much power to the president of the board, and is violative of general constitutional principles against abridging the privileges of citizens, depriving a person of his rights without due process of law, denying him the equal protection of the law, etc.

"The continuous or daily beating of drums on the streets of a city would be an intolerable nuisance, endangering the safety of teams and the occupants of vehicles drawn by animals, as well as of pedestrians liable to be injured by runaways, and stunning the ears with din so constant as to be almost insufferable. On the other hand, there is usually no objection to such noises on a few special occasions, either when there are patriotic celebrations generally participated in by all the people, or processions of a part of the people united in civic societies, political parties, etc. These occasions are comparatively few and usually well known, so that people are prepared for them; and the processions and drums are generally preceded by policemen who give notice of the approaching uproar. But how can these occasions be provided for? By an ordinance which shall anticipate and state in detail beforehand every occasion on which the noises may be made? Such a thing is practically impossible. No human foresight could conjure up all the circumstances under which the people might want a band (with a drum) on the streets. It would not do to name legal holidays alone; that, for obvious reasons, would be too narrow a provision. Neither would it do to single out, in addition to legal holidays, certain other enumerated days, as, for instance, the first Monday of every month. The president of the United States, or some other distinguished man, whose advent should be celebrated with drums might come on Tuesday. Neither would it be possible to schedule the kinds or characters of occasions of which drumbeats would be a necessary part. And so the practical result of petitioner's contention is that all persons must be allowed to beat drums on all occasions as they may choose, or no person must be allowed to beat a drum on any occasion whatever.

"In dealing with this and similar questions—such as repairs of wooden buildings within fire limits, carrying concealed weapons, using public buildings and grounds, ringing bells on buildings where many operatives are employed, haranguing on the streets of lecturers, preachers, etc., singing or playing of musical instruments on the streets, and the like—our federal, state, and municipal governments have always recognized the practical impossibility of providing in advance for proper exceptional cases, and the necessity of giving to a public officer some discretion in the premises; and

laws and ordinances based on that principle have nearly always been upheld when subjected to judicial test."

In Ex parte Fiske, 72 Cal. 125, 13 Pac. 310, the objection to an ordinance of the city and county of San Francisco prohibiting the alteration or repair of any wooden building within certain designated fire limits, without permission in writing signed by a majority of the fire wardens, and approved by a majority of the committee on fire department and the mayor, was that the regulation was beyond the legislative power of the municipal government or the state in that it was unreasonable, oppressive, and not general in its operation; that it was an unwarrantable delegation of power to the officers therein named and attempted to grant absolute power, which might be used arbitrarily to the advantage of favorites, and to the prejudice of others, and denied to petitioner the equal protection of the law and deprived him of his property without due process of law, in violation of the fourteenth amendment of the federal Constitution. In discussing this objection it is there said:

"There would therefore be no doubt as to the validity of the section of the ordinance under review if it were not for the provision that certain officers may grant permissions to make repairs. It is clear, however, that a literal compliance with a regulation prohibiting the repairing of a wooden building might work, in some instances, useless hardships. The repair of a leaking roof or broken window would be necessary to the comfort and health of a family, without enhancing the danger which the framers of the ordinance sought to provide against; and repairs of a more extensive character might be made to particular houses, standing in particular localities, without increasing the fire risks; and it is equally clear that no general rule could be established beforehand that would meet the emergencies of individual cases. Therefore the power to give relief in particular instances is conferred on certain officers, and it is not to be presumed that they will exercise it wantonly, or for purposes of profit or oppression. Neither is the granting of permissions in particular instances to be considered as the taking away of any rights from those to whom such permissions are not given. The latter would be in no better position if such permissions were given to none; or if there was no power to give them at all."

The same principles have been upheld in their application to ordinances relating to the keeping of swine or dairies in cities (Quincy v. Kennard, 151 Mass. 563, 24 N. E. 860; St. Louis v. Fischer, 167 Mo. 654, 67 S. W. 872, 64 L. R. A. 679, 99 Am. St. Rep. 614; State, etc., v. Mead, 71 Mo. 272; St. Louis v. Howard, 119 Mo. 47, 24 S. W. 772); the erection and repair of buildings within certain municipal limits (Commissioners of Easton v. Covey, 74 Md. 262, 22 Atl. 266; Hine v. City of New Haven, 40 Conn. 478; Ex parte Fiske, supra); the beating of drums or sounding other musical instruments in public places (Commonwealth v. Davis, 140 Mass. 485, 4 N. E. 577; In re Flaherty, supra); prohibiting the storing or keeping of explosives in cities (Hays v. Village of St. Mary's, 55 Ohio St. 197, 40 N. E. 924; Foote v. Fire Department, 5 Hill [N. Y.] 99; Hazard Powder Co. v. Volger, 58 Fed. 152, 7 C. C. A. 130); and many other subjects not necessary to be enumerated. These considerations are, I think, conclusive of the validity of the ordinance here involved. It is true that counsel for complainant refer to some cases which at first reading seem to some extent to support the view advanced by them; but most of those cases can be distinguished upon much the same grounds as will

be found aptly stated in Ex parte Flaherty, supra, and those which cannot I do not regard as supported either by the better reasoning or the weight of authority.

As to the second objection urged, 1 do not regard the allegations of unfair and arbitrary action of the city authorities in administering the ordinance, upon which this objection is based, as adding anything of substance to the bill in making a case for equitable relief. The ordinance being a valid regulation, however flagrantly partial its administration may be, the remedy is not in equity to restrain the city authorities from enforcing it, but at law to compel the issuance of a permit if the facts warrant it. Mutual Electric Light Co. v. Ashworth, 118 Cal. 1, 50 Pac. 10. The facts alleged do not, in my judgment, bring the case within the principles of Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220. The ordinance there involved was shown to have been aimed at a particular class—the Chinese—and practically without any purpose on the part of the authorities at its inception of administering it fairly and impartially toward all who stood in the same relation to its subject-matter.

The application for an injunction will be denied, the demurrer sustained, and the bill dismissed.