[No. 14118.   Department One. — November 7, 1891.]

# GASPAR OREÑA, RESPONDENT, v. CITY OF SANTA BARBARA, APPELLANT.

DEED FROM CITY—BOUNDARY UPON STREET — CHANGE OF SURVEY — RE-MOVAL OF FENCE BY GRANTEE. — Where a deed from a city bounded the land granted by a street which had been previously located and surveyed by a city surveyor, and the grantee had for many years held possession of and fenced the lot nearly according to such location and survey, and the street was in use by the public accordingly, the fact that a new survey of the street is afterwards made, changing its line so as to exclude therefrom a strip of land adjoining the lot granted, cannot entitle the grantee to remove his fence to the line of the street as fixed by the new survey, so as to include such strip in his lot, but he is restricted to the lot as bounded by the line of the street as originally surveyed.

ID. — DETERMINING LINE OF STREET — MEASUREMENTS — USER — ACQUIES-CENCE OF PUBLIC. — In determining the line of a street, measurements upon such street are of more value than measurements taken elsewhere; and if they or the places where they were cannot be located, the boundaries of the street as actually opened and used should be ascertained; and if such location has been generally acquiesced in by the public, by lot-owners and by the municipality, in the absence of more certain evidence, it will be conclusive.

ID. — ASCERTAINMENT OF SURVEY — INITIAL POINT AND BASE-LINE — OTHER ASCERTAINED POINTS. — The initial point and base-line of a survey of a town is not necessarily controlling over other ascertained points in the survey in ascertaining the actual location of streets or blocks; but the question as to whether such point or line is of greater or less importance than other ascertained points or lines depends upon circumstances, and their proximity and relation to the point to be located.

ID. — MUNICIPAL ORDINANCE — CHANGE OF LOCATION OF STREETS — EN-LARGEMENT OF RIGHTS — RULES OF EVIDENCE. — An ordinance of a city providing that certain monuments shall from the date of the ordinance be the initial points of the town survey, and of all locations of lots and streets, and that all surveys made thereafter that shall deviate from such initial points shall be null and void, is void, and not admissible in evidence to show enlarged rights against the city. The city council cannot change the location of the streets by such a resolution, or affect the rights of land-owners under grants previously made, nor can it lay down rules of evidence by which the courts are to determine the location of the points or lines of the survey.

ID. — ESTOPPEL OF CITY. — Such ordinance does not estop the city from claiming that a survey is correct which was made before the passage of the ordinance, and which established the line of a street inconsistent with the line referred to in the ordinance.

ID. — ADVERSE POSSESSION OF STREET — STATUTE OF LIMITATIONS. — There can be no adverse possession of a public street, and no title can be acquired thereto under the statute of limitations.

ID. — QUIETING TITLE — BURDEN OF PROOF. — In an action by the grantee of a city to quiet title to a strip of land claimed by the city as part of a

street, the burden is upon the plaintiff to show title in himself by proof that the land is within his grant, and the question of adverse possession is a false quantity in solving the question of title.

APPEAL from a judgment of the Superior Court of Santa Barbara County, and from an order denying a new trial.

The facts are stated in the opinion.

*Thomas McNulta*, for Appellant.

The plaintiff's title must be based on his deed of July, 1867, obtained from the town trustees in lieu of his old grant, or confirming that grant, which was not definitely located, and by this deed plaintiff's land is bounded on two sides by State and Gutierrez streets; and he is estopped by his petition for this deed, and the deed itself, from claiming otherwise. (*Stanley* v. *Green*, 12 Cal. 163; *Sneed* v. *Woodward*, 30 Cal. 434; *Bollo* v. *Navarro*, 33 Cal. 466; *Phelps* v. *McGloan*, 42 Cal. 298; *McFadden* v. *Ellmaker*, 52 Cal. 348; *People* v. *Blake*, 60 Cal. 497, 503, 510; *Moore* v. *Jones*, 63 Cal. 12.) If the land in controversy was part of Gutierrez Street, no adverse claim, use, or possession could give plaintiff title to it, and the town or city could not convey it to him, or grant him permission to privately use it, as a municipality has no right to sell its streets or to grant such permission. (*City of Visalia* v. *Jacob*, 65 Cal. 436; 52 Am. Rep. 303; *Hoadley* v. *San Francisco*, 50 Cal. 265; *Cohn* v. *Parcels*, 72 Cal. 367, 370; Dillon on Municipal Corporations, 3d ed., secs. 669–671, 675, 683; *Barter* v. *Commonwealth*, 3 Pa. 253; *Burbank* v. *Fay*, 65 N. Y. 57.) The city was not estopped by either ordinance No. 28 or ordinance No. 39 from asserting that Gutierrez Street is where it was originally located by the Haley survey, and the objections of defendant to those ordinances, as to the competency of the municipal authorities to pass them, should have been sustained. Each of these ordinances was passed after plaintiff obtained his deed from the town, and each of them is void. (Stats. 1863–64, p. 502; Stats.

1856, pp. 198–203; Stats. 1873–74, pp. 330–332; Stats. 1875–76, p. 285; Pol. Code, sec. 4408, subd. 19; *Polack* v. *San Francisco Orphan Asylum*, 48 Cal. 491; *Mc-Cracken* v. *San Francisco*, 16 Cal. 591; *Jersey City* v. *State*, 30 N. J. L. 521; *Cross* v. *Morristown*, 18 N. J. Eq. 305.) Neither ordinance 28 nor ordinance 39 alters Gutierrez .Street, or vacates any portion of it, and no power to vacate a street existed at the time these ordinances were passed. (*Wilbur* v. *Washburn*, 47 Cal. 67; *Breed* v. *Cunningham*, 2 Cal. 361; *Pearson* v. *Baker*, 4 Dana, 323.) Parol evidence is admissible to show conflict between the map and the survey, and this can be done, notwithstanding the deed to plaintiff refers to the official map of the town; and as a discrepancy has been shown to exist between the map and the survey, therefore the survey must prevail. (*Whiting* v. *Gardner*, 80 Cal. 78; *O'Farrel* v. *Harney*, 51 Cal. 125; *Penry* v. *Richards*, 52 Cal. 673.) The recital in Oreña's deed, in regard to the land being "known and described on the official map of the said town," included, first, as a matter of law, a reference to an actual survey; and second, it included such reference as a matter of fact by reason of the statement on the map itself; and thirdly, an actual survey was proven, not simply of an initial point and base-line, but of all streets, etc., in the town. (*O'Farrel* v. *Harney*, 51 Cal. 125; *Penry* v. *Richards*, 52 Cal. 672. See also *Jackson* v. *Cole*, 16 Johns. 257; *Ferris* v. *Coover*, 10 Cal. 630; *Colton* v. *Seavey*, 22 Cal. 503; *Kittle* v. *Pfeiffer*, 22 Cal. 491; *Franklin* v. *Doland*, 28 Cal. 178; 87 Am. Dec. 111; *Piercy* v. *Crandall*, 34 Cal. 334; *Jackson* v. *Freer*, 17 Johns. 29; *Chinoweth* v. *Haskell's Lessee*, 3 Pet. 93; *McIvers's Lessee* v. *Walker*, 9 Cranch, 178; *Wendell* v. *People*, 8 Wend. 190.) Parol evidence is admissible to show location of lost stakes, and the places where monuments once stood may be ascertained and identified by evidence. (*Bradford* v. *Hill*, 1 Hayw. 22; 1 Am. Dec. 548, note; *Robinson* v. *Kime*, 70 N. Y. 154; *Colton* v. *Seavey*, 22 Cal. 497; *Dale* v. *Smith*, 1 Del. Ch. 1; 12 Am. Dec. 64, note; *Coate* v. *Speer*, 3 McCord, 227; 15 Am. Dec. 628; *George* v. *Thomas*, 16 Tex. 74; 67 Am.

Dec. 620; *Riley* v. *Griffin*, 16 Ga. 141; 60 Am. Dec. 726.)
In the scale of evidence as to the identity of land, courses
and distances occupy the lowest grade. (*Riley* v. *Griffin*,
16 Ga. 141; 60 Am. Dec. 726. See note to *Heaton* v. *Hodges*,
30 Am. Dec. 731.) Courses and distances will be con-
trolled by reference to a fixed line of a street. (*Faris*
v. *Phelan*, 39 Cal. 613.) The initial point in the survey
or the beginning corner in the plat is of no higher dig-
nity or importance than any other corner in the survey,
and the actual survey governs. (*Pearson* v. *Baker*, 4
Dana, 323. See Code Civ. Proc., secs. 1854, 1859,
2077; *Riley* v. *Griffin*, 16 Ga. 141; 60 Am. Dec. 729;
*George* v. *Thomas*, 16 Tex. 74; 67 Am. Dec. 615; *Williams*
v. *Spaulding*, 29 Me. 112; *Hall* v. *Davis*, 36 N. H. 569;
*Heaton* v. *Hodges*, 14 Me. 66; 30 Am. Dec. 742; *Cheney*
v. *Slade*, 3 Murph. 86; *Esmond* v. *Tarbox*, 7 Greenl. 61;
20 Am. Dec. 346; *Pike* v. *Dyke*, 2 Greenl. 213.) A line
which is actually marked part of the way, though not a
right line from corner to corner, will control the boun-
dary, and such boundary for the residue of the distance
will be a direct line to the corner or point of intersection
called for, — in this case, State Street and Gutierrez Street.
(*Heaton* v. *Hodges*, 14 Me. 66; 30 Am. Dec. 738, note;
*Thornbury* v. *Churchill*, 4 T. B. Mon. 29; 16 Am. Dec. 125,
129; *Bryan* v. *Beckley*, Litt. Sel. Cas. 91; 12 Am. Dec. 276;
*Lyon* v. *Ross*, 1 Bibb, 466; *Vance* v. *Marshall*, 3 Bibb, 151,
152; *George* v. *Thomas*, 16 Tex. 74; 67 Am. Dec. 615, 616,
621, and note; *Saltonstall* v. *Riley*, 28 Ala. 164; 65 Am.
Dec. 335; *Wynne* v. *Alexander*, 7 Ired. 237; 47 Am. Dec.
326; 2 Washburn on Real Property, 675; Tyler on
Boundaries, 132.) Ancient reputation and possession
are entitled to infinitely more respect in deciding upon
the boundaries of lots than any experimental surveys.
(*Ralston* v. *Miller*, 3 Rand. 44; 15 Am. Dec. 704.) Com-
mon repute and hearsay evidence are admissible to
prove boundaries. (Code Civ. Proc., sec. 1870, subd. 11;
*Mortin* v. *Folger*, 15 Cal. 277–282; *Cornwall* v. *Culver*, 16
Cal. 424, 428; *People* v. *Velarde*, 59 Cal. 459; Greenl.
Ev., sec. 145, and notes; Wharton on Evidence, sec.

187; *McCoy* v. *Galloway,* 3 Ohio, 282; 17 Am. Dec. 593; *Coate* v. *Speer,* 3 McCord, 227; 15 Am. Dec. 628; *George* v. *Thomas,* 16 Tex. 74; 67 Am. Dec. 621, and note; *Riley* v. *Griffin,* 16 Ga. 141; 60 Am. Dec. 726, 730.) Acts and declarations of a deceased surveyor, while surveying adjoining lots, are admissible as evidence. (*Adams* v. *Blodgett,* 47 N. H. 219; 90 Am. Dec. 569-571, and note.)

*W. C. Stratton,* for Respondent.

What the boundaries of a street are is a matter of law, but where they are is a matter of fact. ( *White* v. *Spreckels,* 75 Cal. 610.) In the absence of monuments, the field-notes of the survey will govern and determine the true line. (*Hubbard* v. *Dusy,* 80 Cal. 281; *Piercy* v. *Crandall,* 34 Cal. 344; *Jackson* v. *Wendell,* 5 Wend. 146, 147; *Walsh* v. *Hill,* 38 Cal. 486; *McIver's Lessee* v. *Walker,* 9 Cranch, 173; 2 Am. & Eng. Ency. of Law, 503, 508; note to *Heaton* v. *Hodges,* 30 Am. Dec. 740.) The map will control as to the boundaries, as the defendant failed to find the original monuments at the corner of State and Gutierrez streets, and has not satisfactorily established the place where they stood, nor does it appear from the evidence that the true line cannot be shown by courses and distances. ( *Whiting* v. *Gardner,* 80 Cal. 78.)

Temple, C. — This is an action to quiet title to a strip of land about sixteen feet wide, claimed by plaintiff to be a part of block 268 in the city of Santa Barbara, and by the defendant to constitute a portion of Gutierrez Street.

In 1851 the city of Santa Barbara, being the proprietor of the ungranted lands within its limits, contracted with Haley for a map of the city, and for a survey and division into blocks and streets of a certain portion of the lands. Haley agreed to divide the city into squares of 150 yards by streets sixty feet wide, and "to mark each angle of said squares with substantial redwood stakes eighteen inches long, not less than two inches in diameter, and

to sink said stakes into the ground sixteen inches; to make an accurate map of said streets and squares," etc.

March 1, 1851, Haley reported "that the city was now surveyed in the manner pointed out in the contract." The report did not contain field-notes, or state the initial point or base-line, or that any had been established.

In November, 1852, the city employed Wackenreuder to make certain surveys and maps, which were reported April 22, 1853, with two maps marked 1 and 2. These maps were, by ordinance passed August 8, 1855, declared official maps of the city of Santa Barbara.

They were maps showing, or purporting to show, the Haley survey.

April 29, 1853, an ordinance was approved declaring certain streets, as surveyed by Haley and mapped by Wackenreuder, open; Gutierrez Street was one of these streets.

Haley made his survey according to contract, and actually located all the streets and blocks, marking each block by a stake driven at each corner. These stakes remained for several years, or at least many of them did, and were known and recognized as Haley's stakes. Lots were sold by the city, and conveyed according to the survey; or at least such is our inference from the evidence, although the fact is not made very clear.

The plaintiff claims under a deed from the town of Santa Barbara, dated July 9, 1867, which describes his property as "one hundred varas lot situated in the southwest corner of block 268, in the town of Santa Barbara, containing 278.1 square feet, bounded on State and Gutierrez streets, and at right angles to said streets 278.1 feet."

It does not appear that there was, at the date of grant, any official map of the town of Santa Barbara, except the Haley, sometimes called the Brady, map, and the Wackenreuder maps.

It is plain, therefore, that plaintiff's lot is bounded by Gutierrez Street as actually located by Haley, and the question in the case is as to this location.

The court apparently failed to find evidence of the existence of any of Haley's stacks upon block 268, or of the precise point where they had actually been placed.

Haley was a witness at the trial, and testified, substantially, that the intersection of Carrillo and State streets was the initial point of his survey; that the streets, as he surveyed them, were exactly sixty feet wide, with the exception of Carrillo and State streets, which were eighty feet each; and that the blocks were 450 feet square, as required by his contract with the city.

The plaintiff had been in possession of his lot for twenty-five years, and had, through tenants, fenced it. Up to about 1876, his fence along Gutierrez Street corresponded very nearly with the line of Gutierrez Street, as claimed by the defendant. At that time, a survey was made from the intersection of Carrillo and State streets, which, allowing sixty feet for the street and 450 feet for blocks, according to the projected plan of the city and Haley's report of his survey, located his line as he now claims it. Thereupon he moved his fence out, as he testified, some fourteen feet; as defendant claims, the whole sixteen feet in dispute.

If the survey of Haley had been exact, the plaintiff would be justified in his conclusion, whether the point measured from were the initial point or any other ascertained point in the Haley survey, for all would correspond; but so soon as it was determined that Haley's survey was inaccurate, as admittedly it was, the value of such measurements from the initial point, or any other, as evidence, was materially impaired. For instance, a point in Haley's survey was pretty well established, at the corner of State and Montecito streets, distant the width of one block and one street easterly from the disputed boundary; and another at the corner of Haley and State streets, the width of one block and two streets westerly. Between these two points, assuming them to have been established, there is an excess of over sixteen feet. According to the testimony of a former city surveyor, who ran the line of Gutierrez Street, by the line

of improvements and reputed monuments in the Haley survey, as he determined them, fourteen feet of this excess is between Haley and Gutierrez streets. This is in the block immediately opposite plaintiff's premises on Gutierrez Street, and is between plaintiff's premises and the assumed initial point. On plaintiff's theory, he would get this entire excess. In other words, he gets the benefit of the mistakes in the survey, which, in order to make out his case, he assumes to have been mathematically correct.

But the initial point and base-line, if they had been marked on the map, and returned in the notes of the survey, instead of existing only in the memory of the surveyor, as they did in this case, would not be necessarily more controlling than other ascertained points in the survey in ascertaining the actual location of streets and blocks; whether the initial point be of greater or less importance than other ascertained points, would depend on circumstances, their proximity and relation to the point to be located.

In determining the line of the street, measurements on that street would naturally be of more value than elsewhere, and if they, or the places where they were, cannot be located, it would be important to ascertain the boundaries of the street as actually opened and used; and if such location has been generally acquiesced in by the public, by lot-owners and the municipality, in the absence of more certain evidence, it will be conclusive.

In this case, the very fact that the plaintiff has inclosed his full quantity of land within the block, as claimed by the defendant, and that, after acquiescing in this line for a number of years, he put out his fence, intruding upon the street then actually used by the public, is a strong circumstance against him. That the fences were built by his tenants makes no difference. He let and relet the premises as inclosed, and still occupies and claims to the fences. He cannot deny his inclosure.

If the entire survey could be revised and made to conform to the plan of the city as projected, and the plaintiff could be awarded his lot under the revised survey, he would gain nothing.   There is no reason in his contention except upon the idea that he will retain the full quantity which he now holds, and so much more.

But there is no more reason for adjusting the lines of Gutierrez Street to the supposed base and initial point than the other streets and blocks where no monuments of Haley's survey are found.   This is obviously impracticable, for it affects the oldest and best-improved portion of Santa Barbara, and the evidence shows, what should have been expected, after the lapse of nearly forty years, that it is difficult to locate such monuments.

The learned judge who tried the case adopted the theory of the plaintiff, and he was probably induced to do this by certain ordinances of the city of Santa Barbara, which were admitted against the objections of the defendant, and which rulings are assigned as error in the statement on motion for a new trial, and on this appeal.

One was ordinance No. 28, passed November 3, 1870. It was here ordained that the iron stakes at the intersection of State and Carillo streets, and at the easterly corner of block 142, "be from now henceforth the initial points of the town survey and of all locations of lots and streets.   Satisfactory evidence shows that the aforesaid corners of blocks have been the initial points of the Salisbury Haley surveys, . . . . therefore . . . . all surveys made thereafter that in any manner deviate from the said initial points, and vary with the courses and distances as set forth in said S. Haley's maps, are hereby declared null and void," etc.

This ordinance is void, and should not have been received in evidence.   The city council could not change the location of streets and highways in this manner, nor could it affect the rights of lot-holders under grants previously made.   Much less could it lay down rules of evidence by which the courts should determine the

location of points, nor determine the fact as to the initial point.

Even if it had been made in advance it would have been utterly impracticable, and would not have controlled the actual survey, although they were shown to be incorrect. No absolutely accurate survey ever was or ever will be made. In order to build cities and towns there must be some finality as to the location of blocks and streets. Under such an ordinance, if valid, there could be none. All lines would 'be forever subject to be revised and corrected, or changed by new surveys not really more accurate, but only for the time deemed so.

The ruling admitting ordinance 39 may be disposed of in the same way.

The respondent claims that these ordinances, under the circumstances, constitute an estoppel against the city; but independently of the fact that so far as locating these lines are concerned they are absolutely void, we see no element of estoppel in them, and the plaintiff has not expended money or done anything to his injury in reliance upon them.

All these ordinances, to which objection was made, were enacted after the grant to plaintiff and after the street had been opened. In no event could they affect the location of plaintiff's lot. We cannot say that they did not affect the judgment of the court below in its determination of the cause.

In his complaint, the plaintiff avers that for more than sixteen years before the commencement of the action, he had been in the actual, open, notorious, quiet, peaceable, and exclusive possession of the premises in controversy, holding and claiming the same adversely to the whole world, and that the defendant was not seised or possessed of the land or any part thereof for five years before the commencement of this action.

The second finding of the court is in nearly the same language. It is also found that the plaintiff is the owner. This may have been a conclusion from the fact of the adverse possession found. The fourth finding is

to the effect that the premises in dispute do not consti-
tute a portion of Gutierrez Street. This also may have
been a conclusion from the same finding of adverse
possession. The fifth finding is to the effect that the
plaintiff did not declare that the premises in dispute
were a part of Gutierrez Street, or consent to its use, and
the same has never been dedicated to public use.

This is all that is found as to the title of plaintiff, and
all may have been inferred from the supposed adverse
possession of plaintiff. But the question of adverse pos-
session is a false quantity in the problem to be solved.

The burden was upon the plaintiff to show title in
himself. He can do that only by proof that the prem-
ises are within his grant. Proof of his supposed adverse
possession does not make a *prima facie* case. This claim
assumes the very question in controversy, for if the
premises are a part of the public street, there could be
no adverse possession. Individuals may intrude upon
or obstruct a public thoroughfare, but the public cannot
be disseised of such lands, and such intruder acquires
no rights.

We think the judgment and order should be reversed,
and a new trial ordered.

BELCHER, C., and VANCLIEF, C., concurred.

The COURT. — For the reasons given in the foregoing
opinion, the judgment and order are reversed and a new
trial ordered.