[Crim. No. 877.  In Bank.—August 5, 1902.]

# In re WILLIAM HENRY JOHNSTON, on Habeas Corpus.

CONSTITUTIONAL LAW—GRANT OF RIGHT TO LAY PIPES IN STREETS— CONDITIONS—POWER OF MUNICIPALITY.—Section 19 of article XI of the state constitution is a direct grant from the people to the persons therein designated of the right to lay pipes in the streets of a city for the supply of illuminating light or water to the city and its inhabitants, the only conditions or limitations of which are, that the work shall be done under the direction of the superintendent of streets, and under such general regulations as the municipality may prescribe for "damages and indemnity for damages," which must be uniform in their application to all who may desire to exercise the privilege.   The municipality has no other power of regulation over the subject than that expressly conferred, and cannot impose additional burdens or terms as a condition to the exercise of the right so granted.

ID.—INVALID ORDINANCE—PERMIT FROM SUPERINTENDENT OF STREETS— PENALTY—POLICE POWER—HABEAS CORPUS.—A city ordinance requiring persons who desire to lay pipes in the streets thereof for the supply of water or illuminating light to make a verified application for a permit from the superintendent of streets, and making it a misdemeanor not to comply therewith, is not a proper exercise of

police power, and is invalid and void. A person proceeding under the constitutional grant of power, after such permit was refused, and arrested for laying down pipes without first obtaining such permit, will be discharged upon *habeas corpus*.

WRIT of *habeas corpus* to the Chief of Police of the City of Pasadena.

The facts are stated in the opinion of the court.

Lynn Helm, Edward C. Baily, and William M. Pierson, for Petitioner. E. F. Preston, *Amicus Curiæ*, also for Petitioner.

C. J. Willet, City Attorney of Pasadena, Herbert J. Goudge, Assistant City Attorney of Los Angeles, and W. R. Bacon, for Respondent.

HARRISON, J.—The petitioner was arrested for the violation of an ordinance of the city of Pasadena, passed December 17, 1901, and seeks his discharge under a writ of *habeas corpus,* on the ground that the ordinance itself is in violation of the constitution and invalid.

Section 2 of the ordinance is as follows: "It shall be unlawful for any person, firm, or corporation to lay down any pipe, conduit, or connection therewith in any public street or thoroughfare in the city of Pasadena, for the purpose of supplying the said city or its inhabitants with fresh water, or with gas used exclusively for illumination, or with other illuminating light, without first obtaining, in the manner hereinafter prescribed, a permit from the superintendent of streets of said city, to make the necessary excavations therefor. Any person, firm, or corporation desiring to obtain such a permit shall file with the superintendent of streets of said city an application therefor in writing, setting forth the public streets or thoroughfares, and the particular portions thereof, which it is desired to excavate, the size and character of the excavation to be made, and specifically the purposes for which the pipe, conduit, or connection therewith, is to be used, whether for water, gas, or electricity, and if for gas or electricity, that said gas or electricity is to be supplied solely to said city or its inhabitants, to be used exclusively for illumination. Said application must be verified by the oath of such person, or by

the oath of a member of such firm, or by the oath of the president and secretary of such corporation, as the case may be. The said superintendent of streets upon receiving such application, and upon compliance by the applicant with all the requirements of the ordinances of said city which are now or which may be hereafter in force, regulating the tearing up or excavation of any part of the public streets or places in said city, shall issue a permit authorizing the excavation described in said application." The next section declares that a violation of the ordinance shall constitute a misdemeanor, and that any person convicted thereof shall be punished by fine or by imprisonment or by both.

The city of Pasadena is a municipal corporation, organized under a charter framed by a board of freeholders, and approved by the legislature January 29, 1901, and does not own or control any public works for supplying its inhabitants with artificial light. The Valley Gas and Fuel Company is a corporation organized under the laws of this state, with its principal office in the city of Pasadena, "for the purpose of manufacturing, distributing, and selling gas in any lawful manner within the State of California, and supplying municipalities and their inhabitants with artificial light." Prior to the passage of the above ordinance the city of Pasadena had adopted an ordinance providing that no person should make, or procure to be made, any excavation in any street of said city for any purpose, without first obtaining from the superintendent of streets written permission to do so, and that any person on applying for such permission should execute to the city a bond in the sum of five hundred dollars, with two sureties, to be approved by the mayor, as an indemnity to the city for any expenditure rendered necessary by said excavations during the period of one year after the said excavations were made. No other ordinance was ever passed by the city in reference to damages, or indemnity for damages, caused by using the streets for laying pipes therein for supplying gaslight to its inhabitants. On December 17, 1901, the Valley Gas and Fuel Company applied to the superintendent of streets for the privilege of using the public streets and thoroughfares of said city for the purpose of laying down pipes and conduits therein, and connections therewith, so far as

might be necessary for introducing into and supplying the said city with gaslight, and presented to said superintendent of streets a bond, duly executed by it, in the sum of five hundred dollars, with two sureties, in accordance with the pro·vision of the ordinance last referred to, which said bond had been on that day approved by the mayor of said city. The superintendent refused to grant the permit, and the city council having refused to direct him to issue the same, the said Valley Gas and Fuel Company afterwards notified the superintendent that on the eleventh day of January, 1902, at 8 o'clock A. M., commencing at a designated point in one of the streets of said city, it would use the public streets of said city for the purpose of laying down pipes and conduits therein, and connections therewith, so far as might be necessary for introducing into and supplying the city and its inhabitants with gaslight or other illuminating light, and offering to comply with all general regulations that such municipality might prescribe for damages and indemnity for damages in connection therewith; said use of said streets to be under the direction of the said superintendent of streets. On said eleventh day of January, 1902, at the time and place designated in said notice, the said corporation commenced using the streets for the purpose theretofore named, and the petitioner herein was then and there in the employment of said company, engaged in excavating the street for the said purpose, and for no other purpose, and was at that time arrested under a complaint issued out of the police court of said city, in which he was charged with the crime of misdemeanor, in that he did, at that time and place, "make an excavation in the public streets,—to wit, Columbia Street at the head of Beacon Street,—for the purpose of laying down pipe for the purpose of supplying said city and its inhabitants with gas, without first obtaining a permit from the superintendent of streets, as provided by ordinance No. 470 of said city of Pasadena." Upon his arrest he sued out from this court a writ of *habeas corpus*, under which he seeks his discharge.

Section 19 of article XI of the constitution declares: "In any city where there are no public works owned and controlled by the municipality for supplying the same with water or artificial light, any individual or any company, duly incor-

porated for such purposes under and by authority of the laws
of this state, shall, under the direction of the superintendent
of streets, or other officer in control thereof, and under such
general regulations as the municipality may prescribe for
damages and indemnity for damages, have the privilege of
using the public streets and thoroughfares thereof, and of
laying down pipes and conduits therein, and connections there-
with, so far as may be necessary for introducing into and
supplying such city and its inhabitants either with gaslight
or other illuminating light, or with fresh water for domestic
and all other purposes, upon the condition that the municipal
government shall have the right to regulate the charges there-
of.'' In *People* v. *Stephens,* 62 Cal. 209, the above section was
construed by this court to be a direct grant from the people
to the persons therein designated of the right to lay pipes in
the streets of a city for the purposes specified, without waiting
for legislative authority, or being subject to any restrictions
from that branch of the government, the court saying, with
reference to the privilege of laying pipes in the public streets
and thoroughfares of any city: ''That privilege is expressly
granted by the section of the constitution cited, subject to the
direction of the superintendent of streets, or other officer in
control thereof, and under such general regulation as the
municipality may prescribe for damages and indemnity for
damages, and upon the condition that the municipal govern-
ment shall have the right to regulate the charges thereof.''
The only limitations upon this privilege are those contained
in the language in which it is granted,—viz., that the work
shall be done ''under the direction of the superintendent of
streets, or other officer in control thereof,'' and ''under such
general regulations as the municipality may prescribe for
damages and indemnity for damages.''   Upon a compliance
with these conditions, any individual or company duly in-
corporated for such purpose is given the privilege ''of using
the public streets and thoroughfares thereof, and of laying
down pipes and conduits therein, so far as may be necessary
for introducing into and supplying such city and its inhabi-
tants either with gaslight or other illuminating light, or with
fresh water for domestic and all other purposes.'' The munici-
pality may prescribe regulations ''for damages and indemnity
for damages,'' but these regulations must be ''general''—i. e.

uniform—in their application to all who may desire to exercise the privilege.

The designation of "damages and indemnity for damages" as the subject upon which the municipality may prescribe regulations in regard to laying the pipes is a limitation upon its authority over the matter, and a prohibition from prescribing regulations upon any other subject connected with the exercise of the privilege. When the sovereign authority of the state, either in its constitution or through its legislature, has created a right and expressed and defined the conditions under which it may be enjoyed, it is not within the province of a municipality where such right is sought to be exercised or enjoyed to impose additional burdens or terms as a condition to its exercise. The constitution does not authorize the municipality to require a permit as a condition upon which the pipes may be laid in its streets, and its claim of a right to require a permit includes the right to refuse one, and the right to annex one condition to the exercise of the privilege implies the right to annex others, which may at least impair, if not in fact amount to a denial of its exercise. The provision that the work is to be done under the direction of the superintendent of streets gives all the protection for the use of the streets that could be obtained under a permit; and, under the provision authorizing the municipality to prescribe regulations for damages and indemnity for damages, the city will be fully protected against any pecuniary loss or detriment.

Under the statutes of New Jersey any telephone company was authorized to use the public roads and highways on the line of its route for the purpose of erecting poles thereon to suspend its wires and other fixtures, upon first obtaining the consent of the owner of the soil, with the proviso that the use of the public streets in any incorporated cities and towns of the state should be subject to such regulations and restrictions as might be imposed by the corporate authorities of said cities and towns. The authorities of the township of Summit passed an ordinance that no wire should he stretched across any public street without the permission of the township committee. In an action to restrain a telephone company from stretching its wires across certain streets of the township the court held that this ordinance was not a "regulation or restriction" under the statute, and was therefore invalid, saying: "A right to

prevent the use of the streets for suspending wires, unless previous consent is obtained, if such a right be lawfully conferred, authorizes a refusal to consent at discretion and confers a virtual power of prohibition. The right to the use of the streets has been expressly granted by the legislature, and the power to prohibit or interdict this use so granted cannot be inferred from the declaration in the proviso annexed to the grant, that the use should be subject to such regulations and restrictions as may be imposed. The restrictions intended in such a proviso must be held to be restrictions in the nature of regulations, and not restrictions which shall prohibit the use or impose new conditions to the power to exercise the franchise.'' (*Township of Summit* v. *New York etc. Tel. Co.,* 57 N. J. Eq. 123.) A charter was granted to a gas company by the legislature of Georgia in which it was authorized to use the streets of the city of Atlanta for laying its pipes and fixtures therein, with the proviso ''that the public thoroughfares shall at no time be unnecessarily interrupted or impeded by the laying down or erection thereof, and that said streets shall not be thereby injured, but shall be left in as good state and condition as they were before the laying down of said pipes.'' The city of Atlanta having passed an ordinance requiring any person who desired to excavate any street for the purpose of laying gas-pipes, or for any other purpose, to procure a written permission therefor from the city engineer, under the penalty of fine and imprisonment, the gas company obtained an injunction against any interference with it on the part of the city authorities in laying the pipes in the streets, and the same was affirmed on appeal, the supreme court saying: ''The permission of the city of Atlanta was not required to enable the complainant to exercise its franchise. It certainly was not made a condition by its charter. This was not the contract into which it entered with the state, and it would appear anomalous if a subordinate power could impose terms which the superior did not see proper to impose.'' (*City of Atlanta* v. *Gate City Gaslight Co.,* 71 Ga. 106.) The same principle has been followed elsewhere. (*Michigan Telephone Co.* v. *City of Benton Harbor,* 121 Mich. 512; *Wisconsin Telephone Co.* v. *City of Oshkosh,* 62 Wis. 32; *Appeal of the City of Pittsburg,* 115 Pa. St. 4; *Borough of Millvale* v. *Evergreen Railway Co.,* 131 Pa. St. 1; *Harrisburg City Ry. Co.* v. *City*

*of Harrisburg,* 149 Pa. St. 465; *State* v. *Flad,* 23 Mo. App. 185; *Hodges* v. *Western Union Tel. Co.,* 72 Miss. 910.) In *Borough of Millvale* v. *Evergreen Railway Co., supra,* the court said: "The power of the defendant in the exercise of its franchise is altogether independent of the borough, and is of just as high and authoritative origin as the right of the borough to exist at all. The rights of both are derived from the same source, to wit: the legislative power of the commonwealth, and the company is not subject to the slightest obligation to go to the borough for consent to exercise any part of its corporate franchise. Any other doctrine would subordinate the corporate franchise of the defendant to the will of the borough council, and cannot be sanctioned for a moment."

The ordinance in question is not an exercise of the police power, nor can it be justified under that authority. The exercise by a municipality of the police power over its streets is limited to the protection of the public in their use of the streets, and does not include a limitation upon their use for any legitimate purpose. The highways of a state, including the streets in its cities, are under the control of the people of the state, and in this state the people have declared in their constitution that the streets of a city may be used for laying pipes therein for supplying its inhabitants with gaslight. Under the provision that the work shall be done "under the direction of the superintendent of streets," ample protection is afforded to the inhabitants of the city against any unnecessary encroachment or hindrance in their use of the streets.

The suggestion on the part of the respondent that it is the purpose of the corporation herein to supply gas through its pipes for other purposes than light, even if founded upon fact, does not deprive it from exercising the right conferred upon it by the constitution, or authorize the municipality to prevent it from enjoying that right. Even though the pipes when laid may be available for other purposes than supplying gaslight, the corporation is not thereby deprived of the right which the constitution has given it to lay its pipes in the streets, nor can it be required as a condition of exercising that right to declare that the gas to be supplied by it shall be used exclusively for illumination, or is to be supplied solely for such use. It may be added that it is not made to appear that the streets will be subject to any other or greater obstruction

than is requisite for the supplying of gas for illuminating purposes. One of the purposes for which the corporation, Valley Gas and Fuel Company, is organized is to supply municipalities and their inhabitants with gas for artificial light, and it has given to the city of Pasadena a bond, executed in accordance with the ordinance of that city, to indemnify it for damages, and, by its notice to the superintendent of streets of the time and place at which it would commence to lay its pipes, has given to that officer an opportunity of having the work done under his direction. The corporation has thus complied with all the conditions named in the constitution as requisite to confer upon it the right to lay its pipes in the streets of that city, and while so engaged its servants and employees are in the exercise of a lawful occupation, for which they cannot be subjected to criminal prosecution or arrest.

The petitioner is discharged.

Garoutte, J., McFarland, J., Temple, J., Henshaw, J., and Beatty, C. J., concurred.