[Civ. No. 158.    Third Appellate District.—January 24, 1906.]

## MERCED FALLS GAS AND ELECTRIC COMPANY, Appellant, v. W. H. TURNER et al., Respondents.

CORPORATION—ELECTRIC LIGHTING COMPANY—REGULATION OF USE OF CITY STREETS.—The privilege given an electric lighting company, by article XI of section 19 of the constitution, under the direction of the superintendent of streets, or other officers in control thereof, of using the public streets of a municipality for introducing and supplying such city with electric lights, does not curtail the power of the municipality in making needful and reasonable regulations touching the use by such company of the streets, although the city will not be allowed to enforce regulations which are tantamount to a denial of the company's right to use the streets, or are arbitrary, capricious, unreasonable, or prohibitory in their nature or effect.

ID.—CHANGE OF LOCATION OF POLES.—The original location of electric lighting poles by such company, by permission of the city authorities, does not give it an absolute, indefeasible right, or irrevocable license, to have each pole remain at the particular spot for all time, and the city authorities have the power, by reasonable regulations, to compel the company to change the poles to other positions.

ID.—NO PRESCRIPTIVE RIGHT TO PUBLIC PROPERTY.—Lapse of time will not confer on the company the absolute right to have the poles remain as originally located, as lapse of time creates no prescriptive right to public property.

ID.—INJUNCTION AGAINST CHANGE OF POLES—NECESSARY AVERMENTS.— In an action by the company to enjoin the carrying out of a resolution of the city trustees requiring it to remove its poles to other locations, the complaint must show that the regulation is unreasonable, arbitrary, confiscating or prohibitory, or that its sole purpose is to harass or annoy the company in the enjoyment of its franchise. A mere allegation that the proposed change would work irreparable injury to the company is not sufficient to warrant an injunction, nor is an allegation that the change would work inconvenience

and deprival of use in the manner theretofore enjoyed by the inhabitants of the city sufficient to show an arbitrary or unreasonable exercise of power on the part of the city authorities.

APPEAL from judgments of the Superior Court of Merced County.    E. N. Rector, Judge.

The facts are stated in the opinion of the court.

Morrison & Cope, and Frank H. Farrar, for Appellant.

F. W. Henderson, for Respondents.

McLAUGHLIN, J.—Action for an injunction restraining the board of trustees and superintendent of the streets of the city of Merced from changing the position of certain electric light poles on M street in said city.    The city has never owned or controlled public works for supplying artificial light, and for ten years prior to the commencement of this action, the appellant corporation had been, and then was, furnishing the city and its inhabitants with electric light, and in so doing had maintained nine electric light poles, at as many different corners on the street mentioned, by permission of the city trustees, and without hindrance from the defendants or their predecessors in office.    On June 6, 1904, the board of trustees, by resolution, ordered that said poles be changed to other positions than those previously occupied, and appellant failing to remove the poles as directed and required by the resolution, the superintendent of streets, by another resolution, was ordered to make the change, and proceeded to do so, whereupon this action was commenced.    The trial court sustained general demurrers to the complaint, and plaintiff declining to amend, two separate judgments were entered, one in favor of the trustees and the other in favor of the superintendent of streets.    The plaintiff thereupon appealed from both of said judgments.

The sole contention of appellant in both appeals involves the power of the city authorities to compel or make the change in question.    Under the constitution of this state, the appellant enjoys and is exercising a franchise giving it the privilege, under the direction of the superintendent of streets, or other officers in control thereof, of using the public streets,

2 Cal. App.—46

so far as may be necessary, for introducing and supplying such city with electric lights. (Const., art. XI, sec. 19; *Stockton G. & E. Co.* v. *San Joaquin County,* 148 Cal. 313, [83 Pac. 54]; *People* v. *Stephens,* 62 Cal. 236; *In re Johnston,* 137 Cal. 119, [69 Pac. 973].) The constitutional provision cited does not expressly confer upon persons exercising such franchises an absolute right to erect poles of any kind on the streets of a city. Indeed, it might be said that a franchise to use the streets for any purpose mentioned in the section may be confined to "laying down pipes and conduits therein, and connections therewith, so far as may be necessary for introducing into and supplying such city and its inhabitants either with gas light or other illuminating light," etc. It is, however, unnecessary in this decision to go to the extent of holding that no such right may be enjoyed, for if it be conceded that judicial precedents and legislative enactment establish or declare such right, still the judgment in the case at bar must be sustained. The act under which the city of Merced was incorporated vests in the board of trustees full power to establish, alter, open, improve and repair streets and sidewalks, remove obstructions therefrom, and generally to manage and control the same (Stats. 1883, p. 268, c. 49; Pol. Code, secs. 4354, 4408, 4410, 4411, 4413); and the constitution gives every city power to make and enforce within its limits all local sanitary, police and other regulations not in conflict with general laws. (Const., art. XI, sec. 11; *Dobbins* v. *City of Los Angeles,* 139 Cal. 179, [96 Am. St. Rep. 95, 72 Pac. 970].) An industrious search has failed to reveal a general law prohibiting the regulation of the use of streets by holders of a franchise. On the contrary, the fundamental law of this state, in conferring the franchise here in question, expressly provides that any individual or company "shall, under the direction of the superintendent of streets, or other officer in control thereof . . . have the privilege of using the public streets." The power to make needful and reasonable regulations touching the use of streets has long been recognized. (*Mutual Electric etc. Co.* v. *Ashworth,* 118 Cal. 6, [50 Pac. 10]; *Ex parte Taylor,* 87 Cal. 94, [25 Pac. 258]; *Ex parte Casinello,* 62 Cal. 541; *Vanderhurst* v. *Tholcke,* 113 Cal. 150, [45 Pac. 266]; *De Baker* v. *Railroad Co.,* 106 Cal. 282, [46 Am. St. Rep. 237, 39 Pac. 610]; *In re Johnston,* 137 Cal. 120, [69

Pac. 973] ; *Ex parte Fiske,* 72 Cal. 125, [13 Pac. 310] ; *Monon-gahela City* v. *Monongahela Electric L. Co.,* 4 Am. Elec. Cas. 56; *American etc. Co.* v. *Hess,* 125 N. Y. 641, [21 Am. St. Rep. 764, 26 N. E. 919; *Denver* v. *Girard,* 21 Colo. 447, [42 Pac. 662].)   The city authorities will not be allowed to enforce regulations which are tantamount to a denial of appellant's right to use the streets, or are arbitrary, capricious, unreasonable, or prohibitory in their nature or effect. (*In re Johnston,* 137 Cal. 120, [69 Pac. 973] ; *Pereria* v. *Wallace,* 129 Cal. 403, [62 Pac. 61] ; *Santa Rosa Lighting Co.* v. *Woodward,* 119 Cal. 30, [50 Pac. 1025].)   But the constitution, in providing for the exercise and enjoyment of the franchise owned by appellant, did not grant an absolute, indefeasible right or easement in the particular spots of earth where its poles were planted originally, nor does the grant contain a hint that the superintendent of streets, or other officer in control thereof, exhausted his jurisdiction or power to direct or control the use of the streets by appellant, when the poles were located in the first instance.   True, the section provides for general regulations for "damages and indemnity for damages," but this is clearly for the protection of the city (*In re Johnston,* 137 Cal. 120, [69 Pac. 973]), and therefore such regulations, or the absence of them, cannot limit or annul the general power granted to the municipality, to direct and control the manner in which the streets shall be used, and the franchise exercised.   Courts will not hesitate to stay the arm of municipal power when any attempt to curtail or deny the constitutional right is made manifest or a clear abuse of discretion is shown.   But they will as unhesitatingly frown upon the doctrine that the constitutional provision in question must be construed as an abdication or denial of power on the part of cities to widen, straighten, beautify and improve streets and sidewalks, and to compel property owners of every class and kind to conform to all reasonable regulations redounding to the general good. It is therefore incumbent upon litigants seeking to restrain the exercise of municipal power in this behalf to show by their pleadings that the regulation in question is an unnecessary and unreasonable exercise of the discretion reposed in the municipal authorities.   The applicant for a restraining order must show by a plain statement of substantive facts that the regulation complained of is unreasonable, arbitrary,

confiscatory or prohibitory. If the complaint before us contained such statement, nay, if it appeared therefrom that the sole purpose of the regulation was to harass or annoy appellant in the enjoyment of its franchise, the relief demanded would not be withheld. But there is nothing in the complaint to show the purpose of the city authorities in making the change, and hence it cannot be determined therefrom whether the regulation is reasonable or unreasonable, just or unjust, wise or otherwise.

The contention of appellant frankly stated and ably advocated is, that the city authorities are absolutely without power to change the poles from the positions they have occupied for so many years. We cannot concur in this view. The original location of the poles by permission of the city authorities created no absolute, indefeasible right, or irrevocable license, to have each pole remain at the particular spot for all time; and it is well settled that lapse of time creates no prescriptive right to public property. (*City of Visalia* v. *Jacob,* 65 Cal. 435, [52 Am. Rep. 303, 4 Pac. 433] ; *Orena* v. *Santa Barbara,* 91 Cal. 631, [28 Pac. 268] ; *Oakland* v. *Oakland W. F. Co.,* 118 Cal. 160, [50 Pac. 277] ; *Home* v. *San Francisco,* 119 Cal. 534, [57 Pac. 950].) It may be contended that the averment of irreparable injury sufficiently shows that the regulation is unreasonable and confiscatory. The damage which has already accrued is estimated at $1,000, and it is difficult to guess why the sum total of damage resulting from the removal of all of the poles may not be as easily estimated and compensated. It is also difficult to imagine how a mere change in the location of the poles could be fraught with such grave consequences. But, waiving these considerations, it is the established law of this state that the mere allegation of irreparable injury is insufficient in actions for an injunction. (*California etc. Co.* v. *Union etc. Co.,* 122 Cal. 643, [55 Pac. 591].) The allegation touching inconvenience and deprival of use in the manner theretofore enjoyed by the inhabitants of the city certainly does not tend to show an arbitrary or unreasonable exercise of power on the part of the city authorities. All municipal regulations cause more or less inconvenience, and it frequently happens that they forbid the use of streets, and even of private property, in a manner theretofore enjoyed, but the law clearly

sanctions such regulations. Respondent's brief contains the statement that a change in the location of the poles is rendered necessary by the construction of artificial stone sidewalks on M street. This statement cannot be considered as a fact in the case, but it serves to illustrate the consequences which would inevitably follow the application of the doctrine for which appellant contends. A village may, perchance, become a city. In such event the footpath or narrow sidewalk which was all-sufficient in bygone days may prove entirely inadequate for the accommodation of an increased and increasing population. If poles upon which telegraph, telephone and other wires are strung must be allowed to remain where they were first located, public improvements and conveniences, made necessary by changed conditions, may be hindered or rendered impossible. Again, the growing needs of a city may invite many to avail themselves of the right to use the streets for purposes enumerated in the section of the constitution under which appellant acquired an equal but not a superior right. If those already using the streets for such purposes cannot be compelled to submit to reasonable regulations touching the location of poles and wires, then the advent of many competitors may be prevented, and the very purpose of the framers of the constitution thwarted, unless danger and inconvenience to the general public be totally ignored.

All laws must be so construed as to avoid absurd and incongruous results, and the doctrine which appellant would have us announce would certainly lead to consequences which it is the general object of laws to prevent. All citizens must conform to needful regulations controlling the exercise of personal and property rights, and holders of a franchise constitute no exception to this general rule.

The judgments are affirmed.

Chipman, P. J., and Buckles, J., concurred.